Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LUIS FERNANDO VILÁ CALDERÓN<br><br>APELANTE<br><br>V.<br><br>ALMA MAITE CANELA CASTILLO<br><br>APELADA | TA2025AP00433 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: **BY2020CV03386**<br><br>Sobre: Liquidación de Sociedad de Bienes Gananciales |

Panel integrado por su presidenta, la jueza Cintrón Cintrón, el juez Pérez Ocasio y la juez Brignoni Mártir[1]

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 21 de enero de 2026.

Comparece ante nos, el señor Luis Fernando Vilá Calderón (en adelante, "el apelante"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la *"Sentencia"* emitida y notificada el 12 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la referida determinación, el foro primario declaró *No Ha Lugar* la *"Demanda"* presentada por el apelante y *Ha Lugar* la reconvención instada por la señora Alma Maite Canela Castillo (en lo sucesivo, "la apelada"). En consecuencia, ordenó al apelante que pagara a favor de apelada la cantidad total de $390,267.02, en concepto de los créditos pertenecientes a la apelada tras liquidar y dividir la comunidad de bienes postganancial existente entre ambos. A su vez, concedió a favor de la apelada el pago de costas, gastos e intereses legales.

Por los fundamentos que expondremos a continuación, modificamos el valor total de los bienes sujetos a inventario y con ello concluimos que el

---

[1] Véase Orden Administrativa OATA-2025-200.

apelante le adeudada a la apelada la cantidad de **$47,270.77** y no de $54,270.77. De igual modo, modificamos la cuantía adjudicada en concepto de mejoras a la cantidad de $82,257.29; se reduce el incremento de valor del inmueble a la cantidad de $110,000.00; y determinamos que la comunidad de bienes postganancial tiene un crédito a su favor por la cantidad de $2,095.68, en concepto de los dineros invertidos a las mensualidades del seguro de vida AIG de la apelada luego del divorcio de las partes. En vista de las anteriores modificaciones, concluimos que la comunidad de bienes postganancial tiene un crédito a su favor por la cantidad total de **$194,352.97.**

De otra parte, determinamos que la extinta SLG **no** tiene un crédito a su favor por los préstamos hipotecarios contraídos durante la vigencia del matrimonio en las fechas de 27 de septiembre de 2001 y del 29 de abril de 2003. La extinta SLG solo tiene un crédito a su favor por el balance de cancelación del préstamo hipotecario privativo por la cantidad de **$112,247.64** y por lo pagado al referido préstamo desde la fecha en que las partes contrajeron matrimonio hasta la fecha en que se saldó la deuda privativa con el préstamo hipotecario contraído el 27 de septiembre de 2001. A su vez, la extinta SLG tiene un crédito a su favor por lo pagado en concepto de seguro de propiedad y en impuestos dirigidos al CRIM durante la vigencia del matrimonio, según las sumas depositadas para dichos fines en la denominada cuenta "escrow."

A la luz de lo anterior, **modificamos** la *"Sentencia"* recurrida con relación a las cuantías y créditos antes expuestos. A su vez, **devolvemos** el caso al foro primario para que se diluciden los créditos que tiene a su favor la extinta SLG, en virtud de las cantidades depositadas para el pago del seguro de la propiedad y del CRIM.

**I.**

El 27 de octubre de 2020, el apelante presentó la *"Demanda"* de epígrafe. A través de esta, peticionó la liquidación de la sociedad postganancial que mantienen con la apelada. Explicó, que el 25 de marzo

del año 2000 contrajo nupcias con dicha parte bajo el régimen económico de SLG. Posteriormente, el tribunal de instancia declaró disuelto su matrimonio mediante sentencia de divorcio emitida el 23 de septiembre de 2020. Sostuvo, que durante la vigencia de dicho matrimonio acumuló junto a la apelada una serie de bienes y obligaciones que es de su interés dividir, cuyos activos habían sido alegadamente despilfarrados por ésta. Ante este cuadro fáctico, solicitó que se ordenara la ejecución de un avalúo e inventario y la liquidación, división y adjudicación del haber ganancial acumulado durante la vigencia de la SLG. Además, peticionó que se le ordenara a la apelada el pago de honorarios de abogado y de los gastos del proceso, ante su negativa de dividir extrajudicialmente la comunidad de bienes existente.

Por su parte, el 5 de febrero de 2021, la apelada presentó *"Contestación a Demanda y Reconvención."* Vía alegación responsiva, aceptó la ocurrencia del referido matrimonio y su posterior disolución. Arguyó en la afirmativa, que intentó llegar a un acuerdo con el apelante para lograr liquidar y dividir la existente sociedad postgancial. Sin embargo, sostuvo que por causas no atribuibles a ella dicho acuerdo no se había podido concretar. Adujo, que en realidad es el apelante quien había estado dilapidando los bienes en común.

En cuanto a la reconvención instada, por medio de ésta, se unió a la solicitud de liquidación y adjudicación realizada por el apelante. Además, reclamó varios créditos a su favor por gastos sufragados con dinero ganancial. Especificó, que el apelante dispuso de bienes gananciales sin su autorización de los cuales reclama la mitad de su valor, como lo serían los dineros obtenidos por la enajenación de una embarcación promovida por la referida parte. A su vez, solicitó su parte ganancial de los pagos efectuados a la hipoteca del inmueble privativo en el que residía el matrimonio; así como el pago de las mejoras realizadas a dicho bien; los impuestos pagados al Centro de Recaudaciones de Ingresos Municipales (CRIM); y las aportaciones realizadas a seguros de propiedad y de vida.

Asimismo, reclamó como bien privativo las acciones de la Corporación Francachela Corporation, la cual se creó durante la vigencia del matrimonio con el motivo alegado de ejercer su profesión de coordinadora de eventos.

En respuesta, el 17 de febrero de 2021, el apelante presentó *"Réplica a la Reconvención."* Contrario a lo aducido por la apelada, sostuvo que en realidad era ella quien había dispuesto de bienes gananciales sin su autorización. Particularizó, que ambas partes acordaron vender la embarcación a la que la apelada hace referencia y que el dinero obtenido por la venta de ésta se encuentra depositado en una cuenta bancaria, sobre lo cual la apelada tiene conocimiento. De otra parte, indicó que había invertido tiempo y dinero en el desarrollo profesional y en el negocio de la apelada. En cuanto a la residencia utilizada por el matrimonio, puntualizó que ésta le pertenecía como bien privativo. No obstante, aceptó que dicho bien fue hipotecado bajo matrimonio y que se le efectuaron mejoras. De igual modo, admitió que los impuestos exigidos para el CRIM fueron pagados con dinero ganancial. En lo que respecta a las pólizas de seguro, sostuvo que solo tiene dos (2) y que una de ellas es de fecha anterior a la ocurrencia del matrimonio. Adujo, que la apelada también posee pólizas de seguro de vida a las que se aportó dinero ganancial. Ante lo expuesto, solicitó que se declara *No Ha Lugar* la reconvención instada por la apelada y *Con Lugar* la *"Demanda"* presentada por él.

Tras varios trámites procesales que no son necesarios de pormenorizar, el 5 de diciembre de 2022, las partes presentaron conjuntamente el *"Informe de Conferencia con Antelación al Juicio."* Mediante este, estipularon los siguientes hechos:

1. Las partes contrajeron nupcias el 25 de marzo de 2000, en San Juan, Puerto Rico, bajo el régimen económico de Sociedad Legal de Gananciales.

2. El vínculo matrimonial entre las partes quedó roto y disuelto por la causal de ruptura irreparable, a través de Sentencia dictada el 23 de septiembre de 2020, notificada el 30 de septiembre de 2020, en el caso Alma Canela v. Luis Vilá, Civil Núm. BY2020RF00811. Dicha Sentencia advino final y firme el 30 de octubre de 2020.

3. Vigente el matrimonio, las partes adquirieron bienes e incurrieron en deudas, sujetas a liquidación.

4. Luego de advenir final y firme la Sentencia de divorcio antes referida, los bienes pertenecientes a la extinta sociedad legal de gananciales pasaron a pertenecer a la hoy comunidad de bienes post ganancial Vilá Canela.

5. El 26 de febrero de 1999, a través de Escritura de Compraventa número veintinueve (29), ante el Notario Público Lesbia Hernández Miranda, el demandante, estando soltero, adquirió la propiedad inmueble localizada en la Urbanización Parkville, Calle Jefferson K-14, en Guaynabo, Puerto Rico (en adelante el "Inmueble").

6. Tras las partes casarse, éstos establecieron su residencia en el referido Inmueble hasta el 10 de junio del 2020. Desde entonces, la demanda ha venido utilizando el Inmueble como su residencia hasta esta fecha, sin que el demandante haya tenido acceso a la misma.

7. Tras su matrimonio, las partes siempre pagaron la mensualidad del préstamo hipotecario del Inmueble con dinero ganancial.

8. Estando las partes casadas, el 27 de septiembre de 2001, las partes incurren en un préstamo hipotecario utilizando el referido Inmueble como garantía. Dicho préstamo fue con el Banco Popular de Puerto Rico (en adelante BPPR), por la cantidad de $200,000.00 al 6.75% de interés anual.

9. Con dichos $200,000.00, las partes saldaron el préstamo hipotecario original incurrido por el demandante en el 1999, el cual a la fecha del préstamo tenía un balance de cancelación de $112,247.64.

10. La diferencia entre el total del préstamo del 1999 ($114,000.00) al balance al 27 de septiembre de 2001 ($112,247.64), fue de **$1,752.36,** principal que fue pagado en matrimonio con dinero ganancial.

11. De dicho préstamo hipotecario del 2001, las partes recibieron un sobrante de **$82,257.29** que utilizaron principalmente para realizarle mejoras el Inmueble.

12. El pago mensual de la referida deuda hipotecaria del 2001 era de $1,329.70. Dicha mensualidad incluye los pagos por concepto de principal, intereses y la cuenta "escrow", que es utilizada para el pago de impuestos (CRIM) y seguros del Inmueble.

13. Vigente el matrimonio, las partes emitieron el pago de dicha mensualidad por 18 meses con dinero ganancial, específicamente desde el mes de noviembre de 2001 a abril de 2003. El total pagado de principal e intereses durante esos 18 meses fue de **$23,349.60.**

14. El 29 de abril de 2003, las partes incurren en un préstamo hipotecario utilizando el Inmueble conyugal como garantía. Dicho préstamo fue con el BPPR, por la cantidad de $220,000.00, al 6% de interés anual.

15. Con dichos $220,000.00, las partes saldaron el préstamo hipotecario incurrido en el 2001, otras deudas del Inmueble y los gastos de cierre. El total utilizado para dichos conceptos fue de $217,084.21. Las partes tuvieron un sobrante de $2,915.79.

16. El pago mensual de la referida deuda hipotecaria del 2003 era de $1,366.51, aunque actualmente es por la cantidad de $1,434.85. Dicha mensualidad incluye los pagos por concepto de principal, intereses y la cuenta "escrow", que es utilizada para el pago de impuestos (CRIM) y seguros de la propiedad.

17. Vigente el matrimonio, las partes emitieron el pago de dicha mensualidad por 209 meses, específicamente desde el mes de junio de 2003 a octubre de 2020, fecha en que advino final y firme la Sentencia de divorcio. El total pagado de principal e intereses durante esos 209 meses fue de **$275,673.09.**

Celebrada la Conferencia con Antelación a Juicio, el 30 de agosto de 2024, las partes presentaron *"Moción Conjunta en Cumplimiento de Orden."* A través del referido escrito presentaron el siguiente inventario actualizado de bienes:

Bienes pertenecientes a la comunidad pos ganancial

| Descripción del bien | Valor según Sra. Canela | Valor según Sr. Vilá |
|---|---|---|
| Francachela Corp | $ 38,806.55 | $59,760.00 |
| Cuenta UBS (Sra. Canela) | $29,872.72 | $29,872.72 |
| Póliza Vanguard | $7,142.62 | $7,142.62 |
| Cuenta BPPR Sr. Vilá (Cuenta Cheque) | $25,970.00 | $9,360.00 |
| Cuenta BPPR Sr. Vilá (Cuenta Ahorro) | $39,464.46 | $4,464.46 |
| Cuenta La Sagrada Familia | $6,856.04 | $6,856.04 |
| Dodge Ram 1500 | $10,000.00 | $10,000.00 |
| Generador Caterpilar 8000W | $8,400.00 | 6,000.00 |
| Generado Honda 1000Watts | $100.00 | |
| Bicicletas | $1,880.00 | |
| Motor de Bote Yamaha | $350.00 | $350.00 |
| Mercedes Benz C300 | $4,521.00 | $4,521.00 |
| Producto Venta Bote | $42,000.00 | $35,000.00 |
| Mobiliario en el Inmueble Conyugal | | |

Así las cosas, los días 14 y 15 de abril del 2025, se celebró la vista en su fondo del presente caso. Durante el desarrollo de ésta fungieron como testigos el apelante y la apelada.

Concluida la vista en su fondo, ambas partes presentaron memorandos de derecho el día 16 de junio de 2025. Posteriormente, el 12 de septiembre de 2025, el foro apelado notificó la *"Sentencia"* que hoy nos ocupa. Mediante esta, el referido foro declaró *No Ha Lugar* la *"Demanda"* presentada por el apelante y *Ha Lugar* la reconvención instada por la apelada. En consecuencia, ordenó que el apelante pagara a favor de la apelada la cantidad total de $390,267.02, en concepto de los créditos pertenecientes a la apelada tras liquidar y dividir la comunidad de bienes

postganancial existente entre ambos. A su vez, concedió a favor de la apelada el pago de costas, gastos e intereses legales.

Además, el foro primario esbozó las siguientes determinaciones de hechos:

1) Las partes contrajeron nupcias el 25 de marzo de 2000, en San Juan, Puerto Rico, bajo el régimen económico de sociedad legal de gananciales.

2) El vínculo matrimonial entre las partes quedó roto y disuelto por la causal de ruptura irreparable, mediante la Sentencia emitida el 23 de septiembre de 2020, y notificada el 30 de septiembre de 2020, en el caso Alma Canela v. Luis Vilá, Civil Núm. BY2020RF00811. Dicha Sentencia advino final y firme el 30 de octubre de 2020.

3) Vigente el matrimonio, las partes adquirieron bienes e incurrieron en deudas, sujetas a liquidación.

4) Luego de advenir final y firme la Sentencia de divorcio antes referida, los bienes pertenecientes a la extinta sociedad legal de gananciales pasaron a pertenecer a la hoy comunidad de bienes post ganancial Vilá-Canela.

5) El 26 de febrero de 1999, a través de la Escritura de Compraventa número veintinueve (29), ante el Notario Público Lesbia Hernández Miranda, el demandante-reconvenido, estando soltero, adquirió la propiedad inmueble localizada en la Urb. Parkville, Calle Jefferson K-14, en Guaynabo, Puerto Rico.

6) Luego que las partes contrajeron matrimonio establecieron su residencia en el referido inmueble hasta el 10 de junio de 2020.

7) Tras su matrimonio, las partes siempre pagaron la mensualidad del préstamo hipotecario del inmueble con dinero ganancial.

8) Estando las partes casadas, el 27 de septiembre de 2001, las partes incurrieron en un préstamo hipotecario utilizando el referido inmueble como garantía. Dicho préstamo fue con el Banco Popular de Puerto Rico (BPPR), por la cantidad de $200,000.00 al 6.75% de interés anual.

9) Con esos $200,000.00, las partes saldaron el préstamo hipotecario original incurrido por el demandante en el 1999, el cual a la fecha del préstamo tenía un balance de cancelación de $112,247.64.

10) La diferencia entre el total del préstamo del 1999 ($114,000.00) al balance al 27 de septiembre de 2001 ($112,247.64), fue de $1,752.36, principal que fue pagado durante el matrimonio con dinero ganancial.

11) De dicho préstamo hipotecario del 2001, las partes recibieron un sobrante de $82,257.29 que utilizaron principalmente para realizarle mejoras el inmueble.

12) El pago mensual de la referida deuda hipotecaria del 2001 era de $1,329.70. Dicha mensualidad incluye los pagos por concepto de principal, intereses y la cuenta "escrow", que es utilizada para el pago de impuestos (CRIM) y seguros del inmueble.

13) Vigente el matrimonio, las partes emitieron el pago de dicha mensualidad por 18 meses con dinero ganancial, específicamente desde el mes de noviembre de 2001 hasta abril de 2003. El total pagado de principal e intereses durante esos 18 meses fue de $23,934.60.

14) El 29 de abril de 2003, las partes incurrieron en un préstamo hipotecario utilizando el inmueble conyugal como garantía. Dicho préstamo fue con el BPPR, por la cantidad de $220,000.00, al 6% de interés anual.

15) Con esos $220,000.00, las partes saldaron el préstamo hipotecario incurrido en el 2001, otras deudas del inmueble y los gastos de cierre. El total utilizado para dichos conceptos fue de $217,084.21. Las partes tuvieron un sobrante de $2,915.79.

16) El pago mensual de la referida deuda hipotecaria del 2003 era de $1,366.51, aunque actualmente es por la cantidad de $1,434.85. Dicha mensualidad incluye los pagos por concepto de principal, intereses y la cuenta "escrow", que es utilizada para el pago de impuestos (CRIM) y seguros de la propiedad.

17) Vigente el matrimonio, las partes emitieron el pago de dicha mensualidad por 209 meses, específicamente desde el mes de junio de 2003 hasta octubre de 2020, fecha en que advino final y firme la Sentencia de divorcio. El total pagado de principal e intereses durante esos 209 meses fue de $285,600.59.

18) El inmueble residencial localizado en la Urb. Parkville de Guaynabo es de naturaleza privativa del demandante. A pesar de que el entonces matrimonio convirtió el inmueble en su vivienda principal, la propiedad no perdió su naturaleza privativa.

19) Las partes estipularon que los bienes pertenecientes a la comunidad de bienes postganancial y sujetos a liquidación son: Francachela Corp., cuenta UBS (señora Canela Castillo); póliza Vanguard; cuenta de cheque BPPR señor Vilá Calderón; cuenta de Ahorro BPPR (señor Vilá Calderón); cuenta La Sagrada Familia; Dodge Ram 1500; generador Carterpillar 8,000 W; generador Honda 1,000 Watts; bicicletas; motor de bote Yamaha; Mercedes Benz C300; el producto de la venta del bote; y el mobiliario en el inmueble conyugal.

20) En el juicio luego de presentada la prueba y conforme a las estipulaciones correspondientes de las partes surge que los valores de los bienes de la comunidad de bienes postganancial son los siguientes:

| Descripción del Bien | Valor |
|---|---|
| Francachela Corp. | $38,806.55 |
| Cuenta UBS (señora Canela) | $29,872.72 |
| Póliza Vanguard $7,142.62 Cuenta de cheque BPPR (señor Vilá) | $25,970.00 |
| Cuenta de Ahorro BPPR (señor Vilá) | $39,464.46 |
| Cuenta La Sagrada Familia | $6,856.04 |
| Dodge Ram 1,500 | $10,000.00 |
| Generador Carterpillar 8,000 W | $8,400.00 |
| Generador Honda 1,000 Watts | $100.00 |
| Bicicletas | $1,800.00 |
| Motor de bote Yamaha | $350.00 |
| Mercedes Benz C300 | $4,521.00 |
| Producto de la venta del bote | $42,000.00 |
| Total de bienes sujetos a liquidación | $215,283.39 |

21) Sobre el mobiliario en la propiedad conyugal, el señor Vilá Calderón testificó en el juicio que no tenía reparos de que la señora Canela Castillo retuviera lo que interesaba.

22) De un análisis de lo ocurrido en el juicio se desprende que de acuerdo a quién tiene la posesión de cada bien, existe una diferencia a favor de la señora Canela Castillo por la suma de $54,270.77. El valor de los bienes gananciales es de $215,283.39 por lo que para equiparar a la señora Canela Castillo, el demandante le adeuda a ella la suma de $54,270.77.

| Descripción del Bien | Valor | Demandante | Demandada |
|---|---|---|---|
| Francachela Corp. | $38,806.55 | | $38,806.55 |
| Cuenta UBS (señora Canela) | $29,872.72 | | $29,872.72 |
| Póliza Vanguard | $7,142.62 | $7,142.62 | |
| Cuenta de cheque BPPR (señor Vilá) | $25,970.00 | $25,970.00 | |
| Cuenta de ahorro BPPR (señor Vilá) | $39,464.46 | $39,464.46 | |
| Cuenta La Sagrada Familia | $6,856.04 | | $6,856.04 |
| Dodge Ram1,500 | $10,000.00 | Cuenta UBS Póliza Vanguard | |
| Generador Caterpillar 8,000 W | $8,400.00 | $8,400.00 | |
| Generador Honda 1,000 Watts | $100.00 | | $100.00 |
| Bicicletas | $1,800.00 | $1,800.00 | |
| Motor de bote Yamaha | $350.00 | | $350.00 |
| Mercedes Benz C300 | $4,521.00 | | $4,521.00 |
| Producto de la venta del bote | $42,000.00 | $42,000.00 | |
| Total de bienes sujetos a liquidación | $215,283.39 | $134,777.08 | $80,506.31 |
| | Diferencia | $54,270.77 | ($54,270.77) |

➢ Respecto a los créditos relacionados con la propiedad localizada en la Urb. Parkville:

23) El inmueble perteneciente al demandante-reconvenido en la Urb. Parkville fue adquirido por éste cuando ya las partes eran novios.

24) El precio de compra de dicho inmueble fue de $114,000.00, según el demandante admitió en su testimonio.

25) Según admitido en su testimonio, el demandante adquirió la propiedad con un 100% de financiamiento.

26) Al momento de las partes estar casados y refinanciar, el balance de dicha hipoteca original fue de $112,247.64.

27) Según estipulado por las partes, la diferencia de $1,752.36 (diferencia de los $114,000.00 y los $112,247.64), también fue pagada con dinero ganancial.

28) De un análisis de lo demostrado en el juicio, el demandante-reconvenido no aportó dinero privativo alguno para el préstamo hipotecario que tomó para adquirir el inmueble, ya que el único balance reducido de la deuda original fue pagado con dinero ganancial.

29) En el juicio se demostró que desde que era novia del demandante, la demandadareconveniente participó de todo el proceso de arreglos y remodelación de la propiedad.

30) A través de su testimonio, el demandante-reconvenido aceptó que durante el matrimonio y con dinero ganancial, el inmueble de Parkville fue completamente renovado en prácticamente todas las partes de la casa (exterior e interior).

31) En el contrainterrogatorio, el demandante fue preguntado una por una sobre todas las reparaciones y/o mejoras, y admitió que con dinero ganancial se le hicieron las siguientes mejoras al inmueble:

a) ventanas de seguridad;
b) cortinas para todas las ventanas;
c) puertas de seguridad incluyendo todos los cuartos y 2 baños internos;
d) puerta de seguridad doble entrada principal;
e) aires acondicionados;
f) mueble empotrado del family;
g) mueble empotrado recibidor;
h) mueble empotrado cuarto máster;
i) mueble empotrado cuarto menor;
j) mueble empotrado con 2 escritorios;
k) expansión de la entrada principal y construcción de entrada nueva a la casa con escaleras en granito;
l) electricidad;
m) instalación de losas internas expansión entrada;
n) instalación de sócalos en toda la casa interior;
o) pasillo lateral del patio con losa;
p) dos (2) baños enchapados y cambio a ducha en el baño máster;
q) puertas de closet en espejos en los tres (3) cuartos;
r) tres (3) cuartos de desahogo o almacenes en la marquesina;
s) rejas del portón lateral;
t) rejas del portón de la marquesina;
u) verjas en PVC en la parte lateral de la propiedad y en la parte de atrás completamente;
v) sistema de seguridad;
w) gabinetes de la cocina; x) gabinetes de los dos (2) baños;
y) inodoros;
z) duchas;
aa) enseres nuevos para la cocina estufa, nevera, microonda;
bb) fascias en la sala, en los dos (2) comedores y en el cuarto máster;
cc) lámparas para la entrada;
dd) closet cuarto máster en madera, área 10x10;
ee) pintura de toda la propiedad;
ff) instalación de una primera planta eléctrica que se vendió;
gg) tanque de gas grande que está en la propiedad;
hh) segunda planta eléctrica marca Caterpillar existente en la propiedad;
ii) jardín frontal;
jj) calentador solar;
kk) terraza agregado expuesto en todo el patio;
ll) piscina;
mm) baño en el área de la piscina;
nn) calentador solar de la piscina;

oo)equipos para la piscina; y

pp) construcción de una barra en el patio.

32) De la prueba presentada, así como de las estipulaciones, surge que para dichas mejoras la sociedad legal de gananciales invirtió no menos de $90,000.00, por lo que procede que se le conceda a la demandada-reconveniente un crédito no menor de $45,000.00 por las mejoras hechos a la propiedad del demandante con dinero ganancial.

33) Durante el juicio surgió de la prueba cómo la propiedad, adquirida en $114,000.00 sin tener las mejoras, aumentó en valor al punto que al 2019 tenía un valor de $224,000.00 y la tasación más reciente realizada en el 2024 por el mismo tasador, resultó con un valor de $310,000.00.

34) La propiedad tuvo un aumento en valor de al menos $110,000.00 durante el matrimonio y el aumento de valor a la fecha más reciente fue de $196,000.00.

35) El aumento en el valor del inmueble es uno ganancial conforme a la prueba presentada por lo que la demandada-reconvenida tiene un crédito por la mitad del aumento de valor de $98,000.00 al 2024.

36) Conforme a su testimonio y recibos presentados y admitidos, luego del divorcio, la demandada-reconveniente pagó gastos de la propiedad de Parkville con dinero privativo de ella producto de su trabajo. Los pagos evidenciados con recibos totalizaron $4,347.48, por lo que procede un crédito a favor de la demandadareconvenida por dicha cuantía.

➢ Créditos sobre Obligaciones Privativas Pagadas con Dinero Ganancial

a) Pagos de la hipoteca del inmueble privativo con dinero ganancial

37) Los hechos probados en el presente caso demuestran que el matrimonio de las partes duró veinte (20) años y ocho (8) meses, lo que equivale a 248 meses.

38) Según la prueba presentada, se demostró que un poco antes de las partes casarse, pero cuando ya las partes eran novios y convivían, el demandante adquirió el inmueble localizado en la Urb. Parkville, Calle Jefferson K-14, en Guaynabo, Puerto Rico.

39) Es un hecho admitido por el demandante en el contrainterrogatorio, que para la adquisición el referido inmueble, el demandante recurrió a un préstamo por la cantidad total del precio de la venta, o sea por la cantidad de $114,000.00.

40) Durante el testimonio directo en el juicio, el demandante-reconvenido reconoció un crédito a favor de la demandada-reconveniente relacionado a la diferencia entre el total del préstamo del 1999 ($114,000.00) al balance al 27 de septiembre de 2001 ($112,247.64), que fue de $1,752.36, principal que fue pagado en matrimonio con dinero ganancial. El crédito es por la mitad de esos pagos o sea de $876.18.

41) De acuerdo con la prueba presentada, la demandada-reconvenida debe ser compensada con un crédito a su favor de la mitad de los $23,934.60 que se estipuló se pagaron con relación a las mensualidades de la deuda hipotecaria del 2001. El crédito es de unos $11,967.30.

42) Conforme a la prueba presentada durante el juicio, la demandada-reconvenida debe ser compensada con un crédito a su favor de la mitad de los $285,600.59, que se estipuló se pagaron con relación a las mensualidades de la deuda hipotecaria del 2003. El crédito es de unos $142,800.30

43) De las admisiones del demandante en su contrainterrogatorio surgió que además de los 209 meses pagados de dicha deuda hipotecaria del 2003, la sociedad legal de gananciales prepagó la hipoteca por seis (6) meses, para un total de $8,609.10. Por lo tanto, procede concederle a la demandada $4,304.55 de dichos pagos adicionales.

44) Las distintas hipotecas del inmueble conyugal fueron utilizadas, entre otras cosas, para saldar la hipoteca original. b) Pago de cuota de mantenimiento con dinero ganancial

45) A través de la prueba presentada fue probado que durante los 248 meses que las partes estuvieron casadas, la sociedad legal de gananciales pagó la obligación del pago de cuota de mantenimiento relacionada al inmueble conyugal.

46) La obligación del pago de cuota de mantenimiento es una atada al inmueble, según admitió el demandante-reconvenido en su testimonio.

47) En su testimonio, el demandante-reconvenido admitió que por dicha cuota de mantenimiento se pagaban $134.00 mensuales, que la cuota en cuestión siempre se pagó a tiempo y que se pagó con dinero ganancial.

48) Por lo tanto, al multiplicar los 248 meses de matrimonio por los $134.00 de cuota mensual, la sociedad legal de gananciales pagó $33,232.00 de dicha obligación privativa del demandante-reconvenido. Por lo tanto, procede se le conceda a la demandada un crédito por $16,616.00.

49) Además, en su testimonio en el contrainterrogatorio, el demandante admitió que durante el matrimonio se prepagaron seis (6) meses de dicha cuota, por lo que a los 248 meses hay que sumarle esos seis (6) meses pagados por adelantado, ende, se pagaron $804.00 adicionales. Por lo tanto, procede se le conceda a la demandada un crédito adicional de $402.00.

50) Conforme a la prueba presentada, siendo una obligación personal del demandante pagada con dinero ganancial, proceden los créditos solicitados por dicho concepto. ¬ Créditos por pagos de pólizas de seguro de vida

51) Vigente el matrimonio, ambas partes poseían pólizas de seguro de vida que fueron pagadas durante el matrimonio con dinero ganancial.

52) Aunque este reclamo de un crédito fue hecho por la demandada-reconveniente, en su testimonio el demandante-reconvenido los admitió, añadiendo a su favor una póliza que se pagó de la demandada.

53) Los pagos admitidos por el demandante fueron: a) Prima Vilá Calderón 1 – $19,564.72, por lo que reconoce crédito por $9,782.36; b) Prima Vilá Calderón 2 – $12,637.56, por lo que reconoce crédito por $6,318.78; c) Prima Canela Castillo – $8,837.40, por lo que el demandante reclamó crédito por $4,417.92.

54) Por lo tanto, conforme a las admisiones del demandante, durante el matrimonio se pagaron $32,202.28 en pólizas a favor del demandante y $8,837.40 en pólizas a favor de la demandada.

Así, se pagaron $23,364.88 en pólizas (neto) a favor del demandante, por lo que procede un crédito neto a favor de la demandada por $11,682.44.

55) Los créditos reclamados por la señora Canela Castillo y los cuales fueron demostrados en el juicio son los siguientes:

| Concepto de Crédito | Valor | Crédito a favor de Canela |
|---|---|---|
| Mejoras al inmueble | $90,000.00 | $45,000.00 |
| Aumento de valor del inmueble | $196,000.00 | $98,000.00 |
| Pagos post divorcio | $4,347.48 | $4,347.48 |
| Reducción principal hipoteca 1999 | $1,752.36 | $876.18 |
| Pagos hipoteca 2001 | $23,934.60 | $11,967.30 |
| Pagos hipoteca 2003 | $285,600.59 | $142,800.30 |
| Adelantos hipoteca 2003 | $8,609.10 | $4,304.55 |
| Cuota de mantenimiento | $33,232.00 | $16,616.00 |
| Adelantos cuota de mantenimiento | $804.00 | $402.00 |
| Pagos pólizas seguros de vida | $23,364.88 | $11,682.44 |
| Total | $667,645.01 | $335,996.25 |

56) Conforme a la prueba presentada y a las estipulaciones de las partes, procede se le ordene al demandante a pagarle a la demandada la cantidad de $335,996.25 de los créditos reclamados por ella.

En desacuerdo, oportunamente el 10 de octubre de 2025, el apelante compareció ante este Tribunal a través de un recurso de apelación. Mediante este, esbozó los siguientes señalamientos de error:

El TPI incurrió en error manifiesto y abuso de discreción al dictar una sentencia parcializada que acogió íntegramente las posiciones de la parte demandada, sin ni tan siquiera mencionar, mucho menos valorar críticamente la evidencia documental y testimonial del señor Vilá ni ponderar de forma ecuánime los argumentos y alegaciones presentados por ambas partes.

El TPI cometió error manifiesto al conceder a la señora Canela, sin evidencia, créditos improcedentes, algunos de ellos incluso duplicados y/o triplicados.

El TPI incurrió en error manifiesto al negarle al señor Vilá la concesión de los créditos que reclamó, sin concederle ni uno, incluso respecto a bienes de carácter privativo, a pesar de que su procedencia fue establecida mediante evidencia clara y no controvertida.

A su vez, el 17 de octubre de 2025, el apelante presentó "*Moción Sometiendo Transcripciones Oficiales de Juicio en su Fondo.*"

El 21 de octubre de 2025, esta Curia emitió una *"Resolución,"* mediante la cual se le concedió a la apelada un término de treinta (30) días para presentar su recurso en oposición y su postura con relación a la prueba oral presentada por el apelante.

En cumplimiento de lo anterior, el 20 de noviembre de 2025, la apelada informó que estipulaba las transcripciones presentadas y radicó su oposición intitulada: *"Alegato de la Apelada."*

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal aplicable a la controversia ante nuestra consideración.

**II.**

**A.      Sociedad de Bienes Postganancial y su Liquidación, División y Adjudicación:**

Es de conocimiento general que la SLG es el régimen matrimonial favorecido por nuestro ordenamiento jurídico y tiene como causa, no el ánimo de lucro, sino la consecución de los fines particulares del matrimonio. *Int'l. Charter Mortgage Corp. v. Registrador*, 110 DPR 862, 866 (1981).  Durante la existencia de la SLG, los cónyuges son codueños y coadministradores de la totalidad del patrimonio matrimonial, sin distinción de cuotas. *Montalván v. Rodríguez*, 161 DPR 411 420 (2004).

De otra parte, la disolución del matrimonio provoca automáticamente la extinción de la SLG debido a que la causa de esta institución se desvanece ante la rotura del vínculo civil entre los cónyuges. A estos efectos, el Art. 105 del Código Civil de 1930, dispone que "[e]l divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges."[2] 31 LPRA sec. 381. Al extinguirse la SLG los excónyuges harán suyos por mitad "las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante la sociedad." 31 LPRA sec. 3621.

El Tribunal Supremo ha reconocido que, en la práctica, la liquidación de los bienes comunes entre los excónyuges no es necesariamente contemporánea a la disolución del vínculo matrimonial. *Montalván v. Rodríguez,* supra, pág. 421. De este modo, se ha establecido que, una vez

---

[2] Es necesario señalar, que hacemos referencia al derogado Código Civil de 1930 por constituirse la sociedad postganancial antes de la vigencia del Código Civil de 2020 e instarse la acción de liquidación y división también en fecha anterior a la entrada en vigor del actual Código Civil. Véase, la cláusula de vigencia prospectiva del Artículo 1820 del Código Civil de 2020. 31 LPRA sec. 5311.

disuelta la SLG, surge entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente y alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división. *Montalván v. Rodríguez,* supra, pág. 421.

La referida comunidad de bienes se rige, a falta de contrato o disposiciones especiales, por las normas dispuestas en los Arts. 326 al 340 del Código Civil de 1930, 31 LPRA secs. 1271-1285, referentes a la figura de la comunidad de bienes. Existe una comunidad de bienes cuando la propiedad de una cosa o de un derecho pertenece de modo *proindiviso* a varias personas. 31 LPRA sec. 1271. Se presume que dichas cuotas son iguales y que la participación de los comuneros será proporcional, tanto en los beneficios, como en las cargas. 31 LPRA sec. 1272. La comunidad de bienes puede extenderse indefinidamente porque la acción para liquidar la cosa común nunca prescribe. No obstante, los excónyuges no están obligados a permanecer en comunidad. 31 LPRA secs. 1279 y 5295. Véase, además, *Montalván v. Rodríguez,* supra, pág. 422.

En lo concerniente, el Código Civil de 1930 en sus Arts. 1316 al 1322, 31 LPRA secs. 3691-3697, dispone las normas generales para la liquidación y adjudicación. La liquidación puede resumirse en tres operaciones: (1) formación de inventario con avalúo y tasación; (2) determinación del haber social o balance líquido a partir; y (3) división y adjudicación de los gananciales. *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 91 (1981). El inventario es la base de todo el proceso, ya que es una relación detallada de los activos y pasivos de la comunidad en el momento de la disolución, acompañada de su tasación. *Id.* Tras la ocurrencia del inventario nuestro ordenamiento jurídico contempla que las cargas y obligaciones se satisfarán con primacía. 31 LPRA sec. 3694. Pagadas las deudas, se liquidará y pagará el capital de los cónyuges hasta donde alcance el caudal inventariado. *Id.* Es decir, hechas las deducciones, el remanente constituirá el haber de la extinta SLG. 31 LPRA sec. 3695. El

remanente líquido de los bienes gananciales se dividirá por mitad entre los excónyuges o sus respectivos herederos. 31 LPRA sec. 3697.

Cabe señalar, que el Art. 1307 del anterior Código Civil, 31 LPRA 3647 establece una presunción de gananciabilidad aplicable a todos los bienes del matrimonio, mientras no se demuestre que pertenecen privativamente a algunos de los cónyuges. *BL Investment Inc v. Registrador*, 181 DPR 5, 13 (2011); *Pujol v. Gordon,* 160 DPR 505, 513 (2003).

A tenor de nuestro ordenamiento civil, son bienes gananciales los siguientes:

> (1)    Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.
>
> (2)    Los obtenidos por la industria, sueldo o trabajo de    los cónyuges o de cualquiera de ellos.
>
> (3)    Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de    los cónyuges.
> 31 LPRA sec. 3641. Véase, además, *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 979 (2010).
>
> Además, son obligaciones de la SLG las siguientes:
>
> **(1)    Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges**.
>
> (2)    Los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.
>
> (3)    Las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges. Las reparaciones mayores no serán de cargo de la sociedad.
>
> (4)    Las reparaciones mayores o menores de los bienes gananciales.
>
> (5)    El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.
>
> (6) Los préstamos personales en que incurra cualquiera de los cónyuges. (Énfasis suplido). 31 LPRA sec. 3661. Véase, además, *Muñiz Noriega v. Muñoz Bonet,* supra, pág. 981.
>
> De otra parte, son bienes de naturaleza privativa los siguientes:
>
> (1)    Los que aporte al matrimonio como de su pertenencia.
>
> (2)    Los que adquiera durante él, por título lucrativo, sea por donación, legado o herencia.
>
> (3)    Los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno solo de los cónyuges.

(4)    Los comprados con dinero exclusivo de la mujer o del marido.
31 LPRA sec. 3631.

En lo aquí atinente, corresponde hacer alusión a las mejoras realizadas con el caudal ganancial y al aumento de valor de bienes privativos como resultado de aportaciones gananciales.

En el escenario de las mejoras, se hace necesaria la observancia del Art. 1304 del Código Civil de 1930. El precitado artículo establece que "[l]as expensas útiles, hechas en los bienes peculiares de cualquiera de los cónyuges mediante anticipaciones de la sociedad o por la industria del marido o de la mujer, son gananciales." 31 LPRA sec. 3644. Jurisprudencialmente se ha establecido que por expensas útiles debe entenderse "todo gasto que produzca utilidad o aumento de valor a los bienes de los cónyuges, en cualquier concepto que sea, ya constituya verdadera mejora útil o de mero recreo." *Muñiz Noriega v. Muñoz Bonet,* supra, pág. 979. Esto, "ya consista en reparaciones que no constituyan obligación de la sociedad, o en cualquier otro beneficio no obligatorio para esa sociedad." *Id.*

Las mejoras realizadas a bienes privativos con el capital ganancial no deben estimar por perdido el capital utilizado, dado que este se transforma en un crédito a favor de la sociedad ganancial contra el cónyuge que posea el dominio del bien mejorado. *Muñiz Noriega v. Muñoz Bonet,* supra, pág. 979. El referido crédito se recuperará al instante de la liquidación de la SLG. *Id.* Cabe mencionar, que "para calcular el crédito en concepto de expensas útiles se toma en consideración el aumento del bien mejorado más ciertas modificaciones." *Id,* pág. 979-980*.* "El aumento del bien mejorado se distribuye entre el cónyuge propietario de este bien y la sociedad de gananciales en proporción al valor del bien y al costo de la mejora al momento en que ésta fue realizada." *Muñiz Noriega v. Muñoz Bonet,* supra, pág. 980; *Calvo Mangas v. Aragonés Jiménez*, 115 DPR 219, 227 (1984).

En lo relativo al aumento de valor, es preciso señalar que "el incremento o deterioro de los bienes beneficia o perjudica al propietario

respectivo, salvo que se deba al esfuerzo o industria de uno de los cónyuges o a expensas de la sociedad de gananciales." *Sucn. Santaella v. Srio. de Hacienda,* 96 DPR 442, 448 (1968). Cónsono con lo anterior, en el referido caso de *Sucn. Santaella v. Srio. de Hacienda, supra,* pág. 450, el Tribunal Supremo, al citar a De Funiak, profirió las siguientes expresiones:

> Así el incremento resulta en el curso ordinario de las cosas, y no de alguna labor o industria, tales incrementos pertenecen por entero al dueño de la propiedad privativa. El resultado es el contrario, por supuesto, si el trabajo, industria o propiedad de los esposos han contribuído al incremento, porque entonces la comunidad debe compartir en el incremento en la proporción a la que la comunidad contribuyó al aumento.

Bajo expresiones similares, en el caso *Alvarado v. Alemañy,* 157 DPR 672, 681 (2002), se estableció lo siguiente:

> [E]l incremento en el valor de un bien privativo beneficia a la sociedad legal de gananciales cuando el aumento se deba a la industria o al esfuerzo no compensado de alguno de los cónyuges, pero que si el cónyuge referido había sido bien compensado por esa labor, entonces, nada podría reclamar la sociedad de gananciales al cónyuge propietario del bien.

**III.**

En esencia, el apelante sostiene que erró el foro primario al adoptar la teoría legal de división de bienes postgananciales sugerida por la apelada, a pesar de que no se presentó prueba que fundamente la totalidad de los créditos concedidos a favor de la referida parte. Particularmente argumenta, que la cuenta de retiro ("Poliza Vanguard") no debe computarse entre los bienes gananciales a dividir por ser una cuenta privativa de aportación patronal. Añade, que las dos (2) bicicletas tampoco debieron valorarse entre los bienes gananciales por éstas catalogarse como artículos personales.

Además, plantea que incidió el foro primario al computar el producto de la venta del bote en $42,000.00. Asimismo, aduce que erró el referido foro al utilizar la tasación del inmueble del año 2024 y no la tasación del año 2019. También, arguye que incidió el foro apelado al conceder créditos a favor de la SLG los cuales exceden el pago del principal hipotecario. Como créditos a su favor, reclamó el reembolso de veintidós (22) meses de pagos hipotecarios postdivorcio que realizó mientras la apelada residía de

forma exclusiva el aludido bien inmueble. De igual modo, reclamó los pagos postdivorcio efectuados al automóvil de la apelada y los pagos realizados al seguro de vida de ésta luego de disuelto el vínculo matrimonial.

Por su parte, la apelada asevera que el foro primario resolvió este caso de manera fundamentada y acorde a la evidencia desfilada. Por lo tanto, razona que se deben de mantener inalteradas las determinaciones relativas a las mejoras, aumento de valor, cuota de mantenimiento del bien inmueble y la adjudicación de los bienes gananciales. Asimismo, sostiene que las hipotecas incurridas durante el matrimonio fueron utilizadas para el saldo de la hipoteca original. Por lo cual, arguye que procede un crédito a favor de la SLG en concepto de todos los pagos hipotecarios efectuados.

Tras un examen minucioso y detallado de la totalidad del expediente ante nuestra consideracion, concluimos modificar la determinación recurrida de conformidad a los valores, créditos y reducciones de cuantías que se expondrán a continuación. A esos efectos, devolvemos el caso al foro primario para que, tras las presentes modificaciones realizadas, determine la cuantía exacta que le corresponde a la extinta SLG en concepto de créditos a su favor y luego de ello adjudique los activos individualizados que les corresponden a cada uno de los excónyuges.

De conformidad a lo reseñado, durante la vigencia de un vínculo matrimonial bajo el régimen de SLG los cónyuges son codueños y coadministradores de todo el haber matrimonial. Al disolverse el matrimonio, la SLG se extingue y queda entre los excónyuges una masa de bienes gananciales susceptible de división. Para ello, se hace necesario entrar en un procedimiento de liquidación, división y adjudicación de la comunidad de bienes postganancial. El principio rector de esta división se guía por la premisa de que los excónyuges harán suyos por mitad las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante la sociedad. Véase, 31 LPRA sec. 3621. No obstante, ello no se efectúa de manera automática. Antes es necesario realizar un

inventario y avaluó del caudal ganancial. Durante este proceso también se hace meritorio examinar los pasivos de la extinta SLG y los créditos que los cónyuges o la misma SLG puedan tener a su favor. Al concluir el anterior examen los activos de la masa ganancial se adjudicarán equitativamente a los excónyuges.

En el presente caso, corresponde revisar el inventario de bienes gananciales entregado conjuntamente por ambas partes y los créditos peticionados por cada uno de los excónyuges. Veamos.

El 30 de agosto de 2024, las partes presentaron una tabla intitulada *"Bienes pertenecientes a la comunidad pos ganancial."*[3] Mediante esta, los excónyuges individualizaron y estipularon los bienes pertenecientes al patrimonio ganancial y presentaron sus posturas respecto al valor de cada bien. Para los siguientes bienes no existe controversia en cuanto a su naturaleza ganancial y valor:

> a)  Francachela Corp." La apelada propuso que esta Corporación se debía valorar en la cantidad de $38,806.55. El apelante estipuló la referida cuantía según consta en la *"Minuta"* notificada el 1 de mayo de 2025.
>
> b)  Cuenta UBS (Sra. Canela)". En el inventario presentado, las partes estipularon el valor de esta cuenta en la cantidad de $29,872.72.
>
> c). "Cuenta BPPR Sr. Vilá (Cuenta Cheque)." El valor de $25,970.00 para esta cuenta fue estipulado por las partes luego de que el apelante aceptara en la vista en su fondo el valor sugerido por la apelada. Véase, *"Vista en su Fondo"* celebrada el 14 de abril de 2025, pág. 36-37.
>
> d). En la moción conjunta que contiene el inventario de bienes gananciales las partes estipularon el valor de la "Cuenta La Sagrada Familia" en la cantidad de $6,856.04.
>
> e). En la moción conjunta que contiene el inventario de bienes gananciales las partes estipularon el valor de la "Dodge Ram 1500" en la cantidad de $10,000.00.
>
> f).  En la vista en su fondo el apelante aceptó estipular el valor del "Generador Caterpilar 8000W" en $8,400.00. Véase, *"Vista en su Fondo"* celebrada el 14 de abril de 2025, pág. 39.
>
> g). En la vista en su fondo el apelante aceptó estipular el valor del "Generador Honda 1000 Watts" en la cantidad de $100.00.
>
> h). En la moción conjunta que contiene el inventario de bienes gananciales las partes estipularon el valor del "Motor de Bote Yamaha" en la cantidad de $350.00.

---

[3] Véase, *"Moción Conjunta en Cumplimiento de Orden."* Entrada Núm. 77 de SUMAC del TPI.

i) En la moción conjunta que contiene el inventario de bienes gananciales las partes estipularon el valor del "Mercedes Benz C300" en la cantidad de $4,521.00.

De otra parte, existe controversia sobre la naturaleza ganancial de la "Póliza Vanguard;" la valorización de la "Cuenta BPPR Sr. Vilá (Cuenta Ahorro);" las "Bicicletas;" y el "Producto Venta Bote."

El apelante sostiene que la "Póliza Vanguard" no debe considerarse como un bien ganancial por tratarse de una póliza de retiro de aportación patronal y no de aportación salarial. No le asiste la razón. A pesar de que el derecho a pensión por retiro es de naturaleza privativa, las aportaciones que un cónyuge pensionista realiza a su plan de retiro son de naturaleza ganancial, por lo que la SLG tiene derecho a un crédito por el importe total de dichas aportaciones al momento del divorcio. Véase, *Carrero Quiles v. Santiago Feliciano,* 133 DPR 727, 733 (1993). En el presente caso, el apelante estipuló la naturaleza ganancial de la "Póliza Vanguard." No obstante, se retractó y argumentó que la SLG no había aportado ninguna suma dineraria a la referida póliza. Mas allá de su cambio de postura y dichos, el apelante no ofreció prueba demostrativa de las aducidas aportaciones patronales y no gananciales. Por lo tanto, se mantiene inalterada la naturaleza ganancial de las aportaciones efectuadas a la "Póliza Vanguard" por un valor de $7,142.62.

Por otro lado, el apelante propone que la "Cuenta BPPR Sr. Vilá (Cuenta Ahorro)" debe ser valorada en $4,464.46. Mientras que la apelada sostiene que dicha cuenta tiene un valor de $39,464.46. El apelante argumenta que la diferencia de los valores propuestos se debe a que en esa cuenta está depositada la suma de dinero obtenida por la venta de un bote ganancial. Ante ello, arguye que consistiría en duplicidad de cuantías considerar de forma independiente el producto monetario de la venta del bote y a su vez sumar el dinero obtenido por la venta de dicho bote junto al resto de las cuantías depositadas en la cuenta de ahorro. Sin embargo, el apelante no presentó evidencia demostrativa de que la cantidad recibida por la enajenación del bote fuera en efecto depositada en la referida cuenta

de ahorro. Por lo cual, se mantiene inalterado el valor de la "Cuenta BPPR Sr. Vilá (Cuenta Ahorro)" por la cantidad de $39,464.46.

En cuanto a las "Bicicletas," la apelada propuso que estas deben ser valoradas en la cantidad de $1,800.00, mientras que el apelante no propuso cantidad alguna. De entrada, ambas partes estipularon la naturaleza ganancial de dichas bicicletas y estuvieron de acuerdo de que estas debían colocarse dentro del inventario. Sin embargo, durante el juicio el apelante aseveró que las bicicletas no debían ser adjudicadas a nadie puesto que son de naturaleza personal y la apelada no las va a poder utilizar. Véase, *"Vista en su Fondo"* celebrada el 14 de abril de 2025, pág. 40. Por otra parte, el apelante reconoció que las "Bicicletas" costaron aproximadamente lo que expresó la apelada. Véase, *"Vista en su Fondo"* celebrada el 14 de abril de 2025, pág. 103. Por su parte, la apelada aduce que las aludidas bicicletas son aerodinámicas, de peso liviano, con "carbon fiber" y con frenos especializados. Véase, *"Vista en su Fondo"* celebrada el 15 de abril de 2025, pág. 42.

Tras examinar las posiciones de las partes, mantenemos inalterada la adjudicación del foro primario en torno a las bicicletas. Es preciso reiterar, que éstas fueron incluidas en el inventario entregado por ambas partes y se estipuló su naturaleza ganancial. Además, el apelante aceptó el costo aproximado de las bicicletas. Así pues, su valor se mantiene en $1,800.00.

En lo que respecta al "Producto Venta Bote," la apelada sugirió que la prestación recibida por la enajenación del referido bote debe ser valorada en la cantidad de $42,000.00, a pesar de que ella desconoce la cantidad final por la que se vendió dicho bote. Véase, *"Vista en su Fondo"* celebrada el 15 de abril de 2025, pág. 135-136. A juicio de la apelada, la SLG tiene un crédito a su favor por la aludida cantidad de $42,000.00, toda vez que ella no prestó su consentimiento para la cuantía final en la que concluyó la venta de la embarcación. No le asiste la razón.

De entrada, hacemos referencia al Artículo 1313 del Código Civil de 1930 que establece en lo atinente lo siguiente:

> No obstante lo dispuesto en el Artículo 91, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges. Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a esta sección, y los demás dispuestos en este Título, no perjudicará al otro cónyuge ni a sus herederos. 31 LPRA sec. 3672.

Jurisprudencialmente, se ha reconocido que las enajenaciones que no cumplan con los preceptos del precitado artículo no surtirán efecto jurídico hasta tanto sean ratificadas por el cónyuge que no ha consentido al acto. Véase, *Soto v. Rivera,* 144 DPR 500, 514 (1997). En el presente caso, no existe controversia sobre que las partes acordaron vender el bote en cuestión. Sobre el particular, la apelada plantea que en un inicio pactaron vender la embarcación por un precio entre las cantidades de $50,000.00 y $55,000.00. Véase, *"Vista en su Fondo"* celebrada el 15 de abril de 2025, pág. 45. No obstante, la apelada no consintió el precio final por el cual se vendió la referida embarcación. Dicha parte no alega la ineficacia del negocio jurídico, sino que cuestiona la cantidad final por la que se vendió. A esos efectos, sugiere que el producto de la venta del bote debe ser valorado en $42,000.00. Sin embargo, no argumentó las razones por las cuales la venta final se debe valorar en la aludida cantidad, más allá de exponer en el *"Alegato de la Apelada"* que "el TPI determinara que el valor adjudicable a la embarcación serían $42,000.00 ya que el valor de dicho bien no se había estipulado."[4] Por su parte, el apelante presentó copia del cheque que recibió en calidad de contraprestación al vender el bote por un valor de $35,000.00.[5]

Ante ello y al apelada no impugnar la validez del negocio jurídico efectuado, a tenor de la evidencia presentada **modificamos el valor**

---

[4] Véase, pág. 29 del *"Alegato de la Apelada,"* presentado ante este Tribunal, Entrada Núm. 6 de SUMAC del TA. Véase, además, el *"Informe de Conferencia con Antelación al Juicio"* mediante el cual la apelada establece, en la página 7 del Informe, que debe ser compensada por **$35,000.00** de la venta del bote. Entra Núm. 46 de SUMAC del TPI.

[5] Véase, "Anejo" de la Entrada Núm. 80 de SUMAC del TPI.

**adjudicado a la embarcación vendida a la cantidad de $35,000.00.** Esta modificación nos invita a variar la cuantía que el apelante le debe a la apelada tras dividir y adjudicar los bienes gananciales sujetos a inventario. Nos explicamos.

De la prueba desfilada durante el Juicio surge que los bienes sujetos a inventarios se dividieron de la siguiente manera:[6]

A. Bienes correspondientes a la apelada: Francachela Corp ($38,806.55); Cuenta UBS ($29,872.72); Cuenta La Sagrada Familia ($6,856.04); Generador Honda $1,000 Watts ($100.00); Motor de bote Yamaha ($350.00); Mercedes Benz C300 ($4,521.00). Todo esto para un valor total de bienes adjudicados de **$80,506.31**.

B. Bienes correspondientes al apelante: Póliza Vanguard (7,142.62); Cuenta de cheque BPPR – señor Vilá ($25,970.00); Cuenta de ahorro BPPR - señor Vilá ($39,464.46); Dodge Ram 1,500 ($10,000.00); Generador Caterpillar 8,000 W ($8,4000.00); Bicicletas ($1,800.00); y el producto de la venta del bote ($35,000.00). Todo eso para un valor total de bienes adjudicados de **$127,777.08.**

Así pues, el total del valor de los bienes sujetos a inventario es de **$208,283.39** y no los **$215,283.39** adjudicados por el tribunal de instancia. A su vez, si se observa la diferencia de los valores adjudicados a cada parte: **$80,506.31** a la apelada y **$127,777.08** al apelante**,** se concluye que el apelante le debe a la apelada una cuantía de **$47,270.77 y no de $54,270.77,** según había establecido el foro primario. El resultado de esta cuantía se fundamenta en la modificación de la cantidad adjudicada a la venta del bote, la cual se cambió de $42,000.00 a $35,000.00.

Superado este análisis, pasamos al examen del resto de las cuantías en controversia.

El apelante impugna los $90,000.00 adjudicados por el tribunal de instancia en concepto de mejoras. Alega, que se valoraron mejoras que no aumentan el valor de la propiedad como lo serían la colocación de cortinas

---

[6] Véase, *Vista en su Fondo"* celebrada el 14 de abril de 2025, págs. 22; 27; y 36 – 41.

y que éstas estaban incorporadas en los pagos de la hipoteca. De entrada, no existe controversia que la propiedad que fungió como residencia conyugal es un bien privativo del apelante. En ese caso y en virtud del Artículo 1304 del Código Civil, *supra* la SLG tiene un crédito a su favor en concepto de las mejores que se le realizaron a la referida propiedad. Surge de la estipulación Núm. 11 del *"Informe de Conferencia con Antelación al Juicio,"* que las partes estipularon que se utilizó principalmente para mejoras el sobrante de $82,257.29 del préstamo hipotecario del año 2001. Las mejoras realizadas con ese dinero fueron detalladas y aceptadas en el Juicio por el apelante. Véase, *Vista en su Fondo"* celebrada el 14 de abril de 2025, pág. 112-117.

Celebrado el Juicio, las partes presentaron memorandos de derecho ante el foro primario. Se desprende del "*Memorando Sobre Juicio Celebrado,"* presentado por la apelada, que ésta sostiene que la SLG no invirtió menos de $90,000.00 en concepto de mejoras.[7] El tribunal de instancia acogió esta postura y valoró las mejoras en $90,000.00. Empero, la inversión de $82,257.29 en concepto de mejoras fue una acordada por ambas partes y ampliamente detallada durante el Juicio. En la vista en su fondo las partes no testificaron que las mejoras debían ser valoradas en la suma de $90,000.00. Por lo tanto, se reduce la cuantía adjudicada en concepto de mejoras a la cantidad estipulada de **$82,257.29.**

En lo que respecta al aumento de valor del bien inmueble, se ha reconocido jurisprudencialmente que el incremento de valor de un bien privativo beneficia a la SLG siempre y cuando el aumento se deba a la industria o al esfuerzo no compensado de alguno de los cónyuges o cuando el incremento se da a expensas de la SLG. Véase, *Alvarado v. Alemañy*, supra, pág.681-682; y *Sucn. Santaella v. Srio. de Hacienda*, supra, págs. 448 y 451. En este caso, las partes aportaron dinero ganancial para mejorar el bien privativo del apelante. Dinero que fue producto de un préstamo hipotecario adquirido durante la vigencia del matrimonio. Por lo

---

[7] Véase, "Memorando Sobre Juicio Celebrado," presentado por la apelada. Entrada Núm. 117 de SUMAC del TPI, pág. 10 del Memorando.

tanto, el aumento de valor que dichas mejoras hayan impulsado se trata de uno a expensas de la SLG.

El apelante adquirió el inmueble en cuestión en el año 1999 mediante un préstamo hipotecario de $114,000.00. En el año 2019, con anterioridad a la sentencia de divorcio, las partes tasaron la propiedad y su valor de tasación resultó en $224,000.00. Las partes se divorciaron en el año 2020 y su divorcio advino final y firme el día 30 de octubre de 2020. Posteriormente, en el año 2024, las partes tasaron nuevamente la propiedad y ésta se valoró en la cantidad de $310,000.00. El tribunal de instancia computó el crédito ganancial a base de este último valor para una cantidad total de $196,000.00. Cantidad que surge al comparar el valor inicial de $114,000.00 con el valor final de $310,000.00.

Sin embargo, al momento de la tasación del año 2024 las partes llevaban aproximadamente cuatro (4) años de haberse divorciado. La SLG ya estaba extinta y solo permanecía, como hasta ahora, la comunidad de bienes postganancial. Entiéndase por ello, que a esa fecha las partes no eran cónyuges sino comuneros. Así pues, el aumento de valor de la propiedad en una etapa postdivorcio no se debe a la industria o esfuerzo de los cónyuges tal como lo requiere nuestro ordenamiento jurídico. Además, las partes no presentaron prueba sobre que se utilizaran bienes de la comunidad postganancial para realizarle mejoras a la propiedad del apelante, las cuales incrementaran su valor. Por lo tanto, se debe utilizar la tasación **no controvertida** del año 2019 para fijar el aumento de valor y no la tasación del año 2024. Según expuesto, la tasación del año 2019 resultó en la cantidad de $224,000.00. Al compararla con el valor inicial de la propiedad ($114,000.00), resulta un aumento de valor de $110,000.00. **Así pues, se modifica el aumento de valor de $196,000.00 adjudicado por el tribunal de instancia a la cantidad de $110,000.00.**

En lo que respecta a los pagos hipotecarios efectuados durante el matrimonio a la propiedad privativa del apelante, las partes difieren en los créditos a los que tiene derecho la SLG en concepto de los pagos

desembolsados. Por un lado, el apelante plantea que la SLG exclusivamente tiene derecho a un crédito por lo pagado en concepto de principal de préstamo hipotecario. Por su parte, la apelada argumenta que la SLG tiene derecho a un crédito por los pagos efectuados en concepto de principal y de intereses hipotecarios. Sin embargo, como cuestión de derecho la SLG solo tiene a su favor un crédito por lo pagado a la hipoteca adquirida por el apelante durante su soltería y no por las hipotecas a las que se obligó la SLG durante el matrimonio. Nos explicamos.

El bien inmueble fue adquirido por el apelante el 26 de febrero del año 1999 por la cantidad de $114,000.00 mediante un préstamo hipotecario. Las partes se casaron el 25 de marzo del 2000. Las referidas partes estipularon que tras contraer nupcias pagaron la mensualidad del préstamo hipotecario con dinero ganancial. Véase, la estipulación Núm. 7 del "*Informe de Conferencia con Antelación al Juicio,*" Entrada Núm. 46 de SUMAC del TPI. En ese sentido, corresponde un crédito a favor de la SLG por el monto de la deuda privativa pagada con dinero ganancial desde la fecha en que las partes contrajeron matrimonio hasta la fecha en que se saldó la deuda hipotecaria con el préstamo hipotecario contraído el 27 de septiembre de 2001. Esta determinación se ampara en el Artículo 1310 del Código Civil de 1930 que establece que "el pago de las deudas contraídas por el marido o la mujer, antes del matrimonio no estará a cargo de la sociedad de gananciales." 31 LPRA sec. 3663. De igual modo, corresponde un crédito a la SLG por el balance de cancelación del préstamo hipotecario privativo que, según estipulado por las partes, a la fecha de 27 de septiembre de 2001, tenía un balance de cancelación de $112,247.64. Véase, la estipulación Núm. 9 del "*Informe de Conferencia con Antelación al Juicio,*" Entrada Núm. 46 de SUMAC del TPI.

Ahora bien, cabe enfatizar, que de conformidad a nuestro ordenamiento civil son gananciales **"[t]odas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges."** 31 LPRA sec. 3661. Ante ello, son de cargo de la SLG y ésta debe asumir los

préstamos hipotecarios contraídos por estos excónyuges durante la vigencia de su matrimonio. Entiéndase, el préstamo hipotecario del 27 de septiembre de 2001 y el préstamo hipotecario del 29 de abril de 2003. Es preciso destacar, que tal conclusión es cónsona con lo resuelto por nuestro mas Alto Foro en el caso *Muñiz Noriega v. Muñoz Bonet*, supra. En el referido caso, uno de los excónyuges impugnó una determinación del foro apelativo mediante la cual no se le concedieron "los créditos que la ley contempla por el pago, con dinero ganancial de hipoteca sobre bien privativo del demandado." En dicho caso el Tribunal Supremo razonó expresamente lo siguiente:

> En cuanto al primer crédito reclamado pago con el dinero ganancial de la **hipoteca sobre el bien privativo del señor Muñoz Bonet**, basta con señalar que esta deuda hipotecaria fue contraída el 29 de marzo de 1996, **fecha cuando las partes aún estaban casadas.** Por ello, y según la presunción de ganancialidad que recae sobre la deuda hipotecaria, **ésta constituye una obligación ganancial y es la Sociedad Legal de Bienes Gananciales quien tiene el deber de pagarla.** La señora Muñiz Noriega no presentó evidencia que demostrara que esta deuda hipotecaria fue contraída para el beneficio exclusivo de uno de los cónyuges, que no sirvió el interés de la familia o que fue efectuada con el ánimo de perjudicarla o defraudarla. (Énfasis suplido).

De forma similar al caso antes citado, en el caso que hoy nos ocupa las partes adquirieron dos (2) hipotecas estando casadas y ofrecieron como garantía el bien inmueble del apelante. Ambas deudas hipotecarias constituyen una carga ganancial, que tal sociedad asumió y se obligó a pagar. Nótese, que no se trata de dos préstamos asumidos por el apelante estando soltero, sino que las partes como cónyuges decidieron obligarse a estas deudas hipotecarias. A su vez, la apelada no alegó ni pasó prueba sobre que las hipotecas asumidas por la SLG fueron contraídas en oposición al interés familiar. Siendo así, determinamos que la SLG no tiene un crédito a su favor por los préstamos hipotecarios del 27 de septiembre de 2001 y del 29 de abril de 2003.

Sin embargo, la SLG tiene un crédito a su favor por lo pagado en concepto de seguro de propiedad y en impuestos dirigidos al CRIM. Ambas obligaciones surgen por la existencia de un bien inmueble que en este caso es de propiedad exclusiva del apelante. Es decir, las referidas obligaciones

dependen del bien inmueble y son accesorias a éste. Por lo tanto, no emergieron de una obligación ganancial sino de la adquisición de un bien inmueble que en este escenario es de naturaleza privativa. Así pues, la SLG tiene un crédito a su favor por lo pagado en dicho concepto.

De otra parte, el apelante reclama los pagos postdivorcio efectuados al seguro de vida de la apelada y al vehículo Mercedes Benz de dicha parte, por alegadamente haberse pagado con dinero ganancial procedente de la cuenta de cheques de Francachela Corp.

El derecho sobre la titularidad de una póliza de seguro de vida es personalísimo, pero "habrá que acreditarse a favor de la sociedad de gananciales la cantidad que se haya invertido de los bienes de ésta en concepto de las primas pagadas durante el matrimonio." *Pilot Life Ins. Co. v. Crespo Martínez,* 136 DPR 624, 638-639 (1994). Según reseñado, al disolverse el matrimonio se extingue la SLG y se crea una comunidad de naturaleza ordinaria. *Montalván v. Rodríguez*, supra, pág. 420-421. En consecuencia, los bienes que produzca cada excónyuge son privativos. *Id,* pág. 428*.* No obstante, cuando se utilizan fondos comunes, la comunidad postganancial tienen derecho a un crédito por el importe actualizado de los fondos comunes utilizados. *Id*, pág. 426.

En este caso, está estipulado que Francachela Corp y el referido vehículo de motor son bienes gananciales. Al constituirse la comunidad de bienes postganancial la Corporación y el vehículo de motor quedaron subsumidos en toda la masa postganancial, la cual es de naturaleza indivisa hasta su liquidación y división. Siendo así, el vehículo Mercedes no era de propiedad exclusiva de ninguno de los excónyuges, puesto que permanecía como parte del haber postganancial. Por lo tanto, dado a su naturaleza de bien comunitario, los pagos que se realizaron al mismo no constituyen un crédito a favor de la comunidad ordinaria o de alguno de los excónyuges. Así pues, no le asiste la razón al apelante con relación al crédito solicitado por los pagos efectuados al referido automóvil.

Distinto es el escenario de los pagos postdivorcio realizados al seguro de vida de la apelada. La norma establece que los bienes gananciales invertidos en pólizas de seguro de vida durante la vigencia del matrimonio crean un crédito a favor de la SLG. Se reitera, que al disolverse el matrimonio se extingue la SLG, pero subsiste entre los excónyuges una comunidad de naturaleza ordinaria. Por lo cual, ambos excónyuges tienen derecho a participar de forma equitativa en su administración, cargas y beneficios. Así pues, el dinero aportado a las pólizas de seguro con dinero de esta comunidad postganancial trae consigo el derecho a que la referida comunidad ostente un crédito a su favor por el dinero invertido.  En este caso, surge de la vista en su fondo que se utilizó dinero de la comunidad postganancial para aportar a las mensualidades del seguro AIG de la apelada.[8] Así pues, la comunidad de bienes postganancial tiene un crédito a su favor por la cantidad de **$2,095.68** invertidos en dicho concepto.

Por otro lado, el apelante reclama una serie de créditos a su favor por los pagos que efectuó luego del divorcio a la hipoteca de su bien inmueble durante el tiempo en que la apelada residió en éste de forma exclusiva. Cónsono con ello, solicitó que también se declare que la apelada le adeuda una suma monetaria en concepto de renta por los mismos argumentos de residencia exclusiva. De forma similar, alegó que Francachela Corp le adeuda dinero en concepto de canon de arrendamiento por mantener una oficina y almacén en su residencia privativa. No le asiste la razón en ninguna de las referidas peticiones.

De entrada, tomamos conocimiento judicial del caso **BY2020RF00811,** mediante el cual se declaró dicho bien inmueble como hogar seguro del hijo de las partes. En dicho caso, las partes llegaron a unas estipulaciones entre las se acordó que el apelante pagaría la hipoteca de la propiedad en concepto de pensión alimentaria. Esto, de manera provisional. Posteriormente, el 23 de marzo de 2022, el tribunal de instancia notificó una *"Resolución"* a través de la cual dejó sin efecto la

---

[8] Véase, *Vista en su Fondo"* celebrada el 14 de abril de 2025, pág. 91.

declaración de hogar seguro dado a que se decretó la custodia compartida del hijo de estos excónyuges. El pago de renta que solicita el apelante es de veintidós (22) meses: desde julio de 2020 a abril de 2022. El divorcio de las partes advino final y firme el 30 de octubre de 2020 y la *"Resolución"* de pagos hipotecarios en concepto de pensión alimentaria se notificó el 11 de septiembre de 2020.

En vista de lo anterior, la apelada residió válidamente en la propiedad como cónyuge del apelante antes de advenir final y firme la sentencia de divorcio. Posteriormente, tuvo derecho a residir en la propiedad cuando el inmueble fungió como el hogar seguro del hijo de las partes y ella ostentaba la custodia exclusiva de éste. El hogar seguro se mantuvo hasta el 23 de marzo del 2022. Luego de ello, la apelada comenzó a pagar la hipoteca, el agua, la luz del bien inmueble, entre otros. Véase, *Vista en su Fondo"* celebrada el 15 de abril de 2025, pág. 63-65. Por lo tanto, no proceden los pagos de renta y de hipoteca solicitados por el apelante.

De igual modo, no proceden los pagos de renta peticionados por dicha parte con relación a la corporación Francachela. Cabe reiterar, que la naturaleza ganancial de la referida Corporación fue estipulada por las partes al incluirla en el inventario de los bienes gananciales. Además, durante la vista en su fondo el apelante admitió que dicha Corporación fungió como fuente de ingresos de la familia. Ante ello, es improcedente solicitarle el pago de renta a una persona jurídica que pertenecía a la SLG y que cooperaba en el sostenimiento de la familia. De otra parte, es preciso señalar que la aducida oficina de la Corporación era también utilizada por el apelante para realizar sus trabajos personales. Por lo cual, no era de uso exclusivo de la Corporación. Véase, *Vista en su Fondo"* celebrada el 14 de abril de 2025, pág. 126-128.

Cabe destacar, que se mantienen inalteradas el resto de las cuantías concedidas por el foro primario que no sean incompatibles con lo aquí resuelto.

**IV.**

Por los fundamentos expuestos, modificamos el valor total de los bienes sujetos a inventario y con ello concluimos que el apelante le adeudada a la apelada la cantidad de **$47,270.77** y no de $54,270.77. De igual modo, modificamos la cuantía adjudicada en concepto de mejoras a la cantidad de $82,257.29; se reduce el incremento de valor del inmueble a la cantidad de $110,000.00; y determinamos que la comunidad de bienes postganancial tiene un crédito a su favor por la cantidad de $2,095.68, en concepto de los dineros invertidos a las mensualidades del seguro de vida AIG de la apelada luego del divorcio de las partes. En vista de las anteriores modificaciones, concluimos que la comunidad de bienes postganancial tiene un crédito a su favor por la cantidad de **$194,352.97.**

De otra parte, determinamos que la extinta SLG **no** tiene un crédito a su favor por los préstamos hipotecarios contraídos durante la vigencia del matrimonio en las fechas de 27 de septiembre de 2001 y del 29 de abril de 2003. La extinta SLG solo tiene un crédito a su favor por el balance de cancelación del préstamo hipotecario privativo por la cantidad de **$112,247.64** y por lo pagado al referido préstamo desde la fecha en que las partes contrajeron matrimonio hasta la fecha en que se saldó la deuda privativa con el préstamo hipotecario contraído el 27 de septiembre de 2001. A su vez, la extinta SLG tiene un crédito a su favor por lo pagado en concepto de seguro de propiedad y en impuestos dirigidos al CRIM durante la vigencia del matrimonio, según las sumas depositadas para dichos fines en la denominada cuenta "escrow."

A la luz de lo anterior, **modificamos** la *"Sentencia"* recurrida con relación a las cuantías y créditos antes expuestos. A su vez, **devolvemos** el caso al foro primario para que se diluciden los créditos que tiene a su favor la extinta SLG, en virtud de las cantidades depositadas para el pago del seguro de la propiedad y del CRIM.

Lo acuerda el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones