LA SUCESIÓN DE JOSÉ A. SANTAELLA SAURÍ, ETC., ET AL., demandantes y recurridos, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

*Número:* R-66-407     *Resuelto:* 28 de junio de 1968

*J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados del recurrente; *Leopoldo Tormes García,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

A los fines de la Ley de Contribución Sobre Herencia, ¿es de carácter privativo o ganancial la plusvalía en acciones corporativas o en bienes inmuebles adquiridos por un causante con caudal propio?

Ésta es en esencia la cuestión a dilucidar en el caso de autos. Los hechos fundamentales fueron estipulados por las partes quedando en controversia únicamente el carácter—privativo o ganancial—de los incrementos ocurridos después del matrimonio en el valor de unas acciones privativas y de un bien inmueble. De los hechos estipulados se desprende que José Antonio Santaella falleció en Ponce el 11 de noviembre de 1962. El Secretario de Hacienda determinó la contribución de herencia en $362,343.46. La Sucesión del

causante estuvo conforme en pagar sólo la cantidad de $161,178.51, siendo el remanente de $201,164.95, impugnado ante el Tribunal Superior, Sala de Ponce, mediante el procedimiento de apelación fijado por la Ley Núm. 235 de 10 de mayo de 1949, 13 L.P.R.A. sec. 281 y siguientes.

Dicho remanente se refiere a las siguientes partidas compuesta de bienes que el Secretario de Hacienda considera de carácter privativo y que, por el contrario, la Sucesión considera solamente privativo el costo original de los bienes, pero ganancial la plusvalía:

(1) Solar y casa ubicada en la calle Sol Esq. Unión de Ponce, adquirida por el causante *mediante permuta* de 3585 acciones de Constancia Development Corporation, que le pertenecían con carácter privativo. Al momento de la emisión, las acciones tenían un valor par de $10.00 cada una, y, al permutarse tenían un valor de 12.8736 para un total de $46,146.74. El tribunal de instancia consideró privativo el costo original de $10.00 por acción y ganancial la plusvalía de $2.8736 por acción. Al fallecimiento del causante, el Secretario de Hacienda valoró el inmueble permutado en $61,600. El tribunal de instancia, aplicando la proporción anterior concluyó que de esa cantidad $47,849.46 eran privativos y $14,850 gananciales.

(2) 8,170.06 acciones de Playa Development Corporation adquirida por el causante el 26 de enero de 1962 *mediante permuta* de varios inmuebles que le pertenecían con carácter privativo. El valor original de emisión, fue de $10.00 por acción para un total de $81,706. Al deceso del causante el Secretario de Hacienda valoró las acciones en $562,537.50 reflejando así una plusvalía de $480,831.50, la cual el Tribunal consideró ganancial.

(3) 7900 acciones de Sabarí Estate Inc., adquirida por el causante en la misma fecha del 26 de enero de 1962, *también mediante permuta* de varios inmuebles que le pertenecían con carácter privativo. Al momento de la emisión, las acciones tenían un valor par de $10.00 cada una y a la fecha del deceso del causante el Secretario de Hacienda las valoró en $508,513.50 reflejando una plusvalía de $367,013.50, que, al igual que la anterior, el Secretario de Hacienda consideró como privativa y el tribunal de instancia, concluyó que era ganancial.

(4) 86.432 y .611 acciones de la Constancia Development Corporation adquiridas por el causante con carácter privativo. El costo original de dichas acciones fue de $864.32 y $6.11 respectivamente. Al fallecimiento del causante, el Secretario valoró las acciones en $937.56 y $6.73 respectivamente.

El total de estas partidas ascienden a $1,133,595.19, de los cuales el tribunal de instancia adjudicó como ganancial $924,169.34 ([1]) Como consecuencia de ello la imposición contributiva se redujo de $362,343.46 a $161,178.51.

No conforme con esa adjudicación, el Secretario de Hacienda solicitó revisión imputando como único error al tribunal de instancia el resolver que la plusvalía operada en los bienes privativos del causante tiene la condición de ganancial.

En el análisis de esta cuestión procede que consideremos los principios pertinentes que gobiernan el régimen de gananciales, ([2]) y, la naturaleza de la plusvalía de las acciones y del inmueble, bajo las circunstancias específicas de este caso.

---

([1]) La valoración fue hecha por el Secretario de Hacienda y aceptada por la Sucesión, no estando, por lo tanto, la misma sujeta a discusión.

([2]) Arts. 1299 y 1301 del Código Civil, 31 L.P.R.A. secs. 3631 y 3641, los cuales disponen:
Art. 1299.
"Son bienes propios de cada uno de los cónyuges:
(1) Los que aporte al matrimonio como de su pertenencia.
(2) Los que adquiera durante él, por título lucrativo, sea por donación, legado, o herencia.
(3) Los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno solo de los cónyuges.
(4) Los comprados con dinero exclusivo de la mujer o del marido."
Art. 1301.
"Son bienes gananciales:
(1) Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.
(2) Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.
(3) Los frutos, rentas o interés percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges."

No esta envuelto en este recurso, el carácter privativo de las acciones y del inmueble ubicado en la Calle Sol Esq. Unión, los cuales fueron adquiridos por permuta con bienes pertenecientes exclusivamente al causante. (³)

---

(³) No obstante, es conveniente señalar a los fines de aclarar errores factuales y de concepto que el tribunal de instancia, inducido por el alegato de la Sucesión, determinó que el título de adquisición de las acciones se derivó no de un contrato de permuta sino de un contrato de sociedad que "no está comprendido taxativamente entre los modos de adquirir bienes propios que señala el precepto citado, inciso 3 que solo considera 'el retracto' y 'la permuta', y, aunque en este caso en las escrituras de aportación, se habla de permuta de tierras por acciones estas expresiones no pueden variar la verdadera naturaleza del contrato que fue el de sociedad."

Tal apreciación de los hechos y del derecho es errónea.

En cuanto a los hechos. No hubo prueba de que se constituyera una sociedad. En lo que concierne a este punto, la única prueba que se presentó fueron las escrituras de permuta. Los términos de dichas escrituras no dejan duda de la naturaleza del contrato. Aparece claro en ellas que los otorgantes se obligaron a dar una cosa para recibir otra, que es precisamente lo que define el contrato de permuta. Art. 1428 Código Civil, 31 L.P.R.A. sec. 3981.

La Sucesión pudo haber presentado prueba, si la había, para demostrar que fue otra la causa del contrato, *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729 (1958), o para demostrar cual fue la verdadera transacción entre las partes, *Quiñones Ramos* v. *Otero Roque*, 89 D.P.R. 378. No habiendo la más mínima prueba sobre este extremo, el tribunal de instancia tenía la obligación de interpretar las escrituras de permuta por su propio texto, declarando lo que textualmente y en substancia contenían, Art. 26, Ley de Evidencia, 32 L.P.R.A. sec. 1669; más aún, cuando se trataba de un contrato otorgado ante un notario mediante documento público. Los documentos se titularon por el notario "Escrituras de Permuta", y así se describe la transacción en sus diferentes cláusulas. Es también de aplicación el Art. 16 del Código Civil, 31 L.P.R.A. sec. 16, que establece la regla de hermenéutica de que los términos técnicos se interpretarán siempre según su significado en la profesión.

En cuanto al derecho. También erró el tribunal de instancia al limitar el inciso 3 del Art. 1299 exclusivamente a los bienes adquiridos por derecho de retracto o por permuta con otros bienes pertenecientes a uno solo de los cónyuges.

Un principio fundamentalmente del régimen de gananciales es el que reconoce el patrimonio individual de cada cónyuge separado del patrimonio de la sociedad. El título de origen se mantiene por subrogación en los bienes no importa los cambios, transformaciones o sustituciones que se operen en ellos. Manresa IX, *Comentarios al Código Civil Español*, 5ta. Ed. pág. 547, Scaevola XXII, *Código Civil* (1905), pág. 156, Castán,

Procederemos a discutir la naturaleza de la plusvalía de dichos bienes y los criterios de ley para determinar su carácter privativo o ganancial. Para encajarla en el inciso 2 y 3 del Art. 1301 del Código Civil, (4) el tribunal de instancia concluyó que la misma podía considerarse el resultado de la industria o trabajo del causante, a través de las corporaciones de las que formaba parte, o como frutos devengados, teniendo, en uno u otro caso, el carácter de ganancial. En otras palabras, el tribunal imputó al causante las actividades de la corporación, descorriendo así el velo corporativo.

No existe base en la prueba que sostenga la conclusión de que la plusvalía de las acciones se debió a la industria o esfuerzo del causante, o, aun, de las corporaciones. Las permutas se efectuaron el 26 de enero de 1962 y, el causante falleció 11 meses después, el 11 de noviembre de 1962. En tan breve espacio de tiempo es improbable, en ausencia de prueba al efecto, que un aumento tan inusitado, (5) se de-

*Derecho Civil Español Común y Foral,* Tomo V, Vol. 1, 8ª Ed. pág. 270. Borrell y Soler IV, *Derecho Civil Español,* 425 (1954), Puig Peña, *Tratado de Derecho Civil Español,* Tomo II, Vol. I, pág. 298. De otra manera la identidad del patrimonio individual quedaría frustrada por las continuas transformaciones de los bienes en el flujo ordinario de las actividades económicas después del matrimonio. Este principio cobra mayor virtualidad en nuestra creciente economía industrial que estimula la inversión, la especulación, el crédito inmobiliario y otras actividades económicas.

El retracto y la permuta son, pues, simples casos de sustitución de un bien por otro y no los únicos. Scaevola, *op. cit.* pág. 156. Manresa enumera quince ejemplos de subrogación en adición al retracto y la permuta expresando: "El *art. 1396* no añade más casos de subrogación; pero no cabe duda de que existen otros, comprendidos, si no en la letra, en el espíritu de la disposición." Manresa, *op. cit.* 450.

(4) Véase escolio (2).

(5) El aumento fue de $924,169.34. La valoración fue verificada por el Secretario de Hacienda y aceptada por la Sucesión del causante. La misma se llevó a cabo determinando el justo valor en el mercado de las tierras y demás bienes de la corporación a la fecha de la muerte del causante y restándole el pasivo. El cociente se dividió entre el número de acciones emitidas y en circulación. La valoración así efectuada, reflejó adecuadamente el valor real de las acciones, en una clara operación de reajuste del capital corporativo a la realidad.

biera a gestiones del causante o de las corporaciones. Más razonable nos parece inferir que se debió a que el valor que se les fijó a los bienes para los fines de la permuta fue puramente arbitrario o convencional a los únicos fines de organizar las entidades corporativas, o, más propiamente, se debió al flujo natural de valores que genera una economía, como la nuestra, en continuo crecimiento donde la multiplicidad de usos de la tierra se refleja inevitablemente en sus valores. Véase Negrón García *"Impacto del Aumento en el Costo de las Tierras en Puerto Rico,"* 32 Rev. Jur. U.P.R. 1963, pág. 452, Torres Rigual, *"Control of Land Values Through Taxation,"* 23 Rev. C. Abo. P.R. 419 (1963), Abrams, *"Urban Land Problems and Policies"*, 7 *United Nations, Housing and Town and Country Planning* (1953).

En este último caso, la plusvalía debe considerarse propiamente como un incremento o accesión natural. El Art. 287 del Código Civil, 31 L.P.R.A. sec. 1131, dispone que la propiedad de los bienes lleva consigo el derecho por accesión, a todo lo que ellos producen, o se les une o incorpora, natural o artificialmente. O sea, la accesión la establece el Código como una consecuencia del derecho de propiedad, "el mismo derecho de propiedad en ejercicio", la considera Manresa.([6]) Consecuencia de ello, es que el incremento o deterioro de los bienes beneficia o perjudica al propietario respectivo, salvo que se deba al esfuerzo o industria de uno de los cónyuges o a expensas de la sociedad de gananciales— *Puente* v. *Pérez*, 7 D.P.R. 186 (1904); Manresa IX, *op cit.* 546; Puig Peña, *op. cit.* Vol. II, Tomo 1, pág. 593; 4 Borrell y Soler, *op. cit.* pág. 430—en cuyo caso, el Art. 1304 dispone, que se acreditará a la sociedad de gananciales lo invertido en producir la mejora. Puig Brutau expresa esta regla con

---

([6]) *Op cit.* Vol. III, pág. 166. En igual sentido se pronuncia Scaevola *op. cit.* Vol. VI, pág. 520 (5ta. Ed.). Véase Castán *op. cit.* Tomo II, pág. 157; Puig Brutau, Tomo IV, Vol. I, pág. 664; Cossío, *Tratado Práctico y Crítico de Derecho Civil*, Tomo 50, Vol. 1, pág. 65.

meridiana claridad: ". . . el aumento de valor provocado por la inversión o expensa queda integrado en la cosa misma y no surge una parte indivisa a favor de la comunidad de gananciales, sino que ésta solo habrá adquirido un derecho de crédito contra el cónyuge propietario", *op. cit.* Tomo VI, pág. 664.

A contrario sensu, cuando la plusvalía es el mero resultado del transcurso del tiempo, o de otras causas que no sea el esfuerzo de uno de los cónyuges o a costa del caudal común, ella beneficia únicamente al propietario respectivo. El esfuerzo del cónyuge o la inversión del caudal común tiene que ser objeto de prueba por el que alegue el carácter ganancial de la plusvalía. No puede valerse de presunción alguna, ya que el simple aumento de valor no da base para ello. "O sea", como dice Puig Peña, "que la plusvalía de los bienes privados no cae bajo la órbita de la presunción de gananciales que establece el *artículo 1407.* [1307 nuestro] Es necesario acreditar cumplidamente que la misma se debió al caudal común o industria de los cónyuges." Puig Peña, *op. cit.* pág. 293.

A una conclusión similar se ha llegado en las jurisdicciones de Idaho, Louisiana y Texas, que siguen fundamentalmente los principios básicos del régimen de gananciales establecidos en la legislación española. De Funiak, *Principles of Community Property,* Vol. 1, pág. 81 (Ed. 1943).

Así, en *Beals* v. *Fontenot,* 111 F.2d 956 (1940), (5th Cir. Louisiana), se resolvió:

"La estipulación demuestra que durante la vida del finado, la comunidad recibió de la corporación, en forma de dividendos y salarios, compensación por los servicios del finado y que no existe fundamento para una determinación de que el incremento en el valor de las acciones que no fue pagado en dividendos se debió al trabajo, expensas o industria de la comunidad . . . . Limitando enteramente nuestra decisión a la controversia que tenemos ante nos de si la totalidad del valor de las acciones o si solo su costo original está sujeto a la contribución sobre

herencia como propiedad del finado, creemos que está claro que el Juez de Distrito tuvo razón al determinar que el apelante no ha aprobado que este incremento sea el resultado de expendio de trabajo común en industria de la comunidad y no habiendo tenido éxito en así probarlo su reclamación de reintegro debe fracasar." ([7])

Esta misma doctrina fue adoptada en *Daigre* v. *Daigre*, 83 So.2d 900 (1955) y en *Scofield* v. *Weiss*, 131 F.2d 632 (1942) (5th Cir. Texas) en el cual se expresó:

"Parece que se admite, pero si no, está bien establecido que unas acciones de capital corporativo correspondientes a la emisión original, que eran propiedad privativa del marido cuando fueron emitidas, retienen su carácter privativo, no obstante lo mucho que aumenten su valor como resultado de sobrantes acumulados de las ganancias de la corporación."

De Funiak, al discutir la cuestión en términos generales expresa:

"Bajo el sistema español, cuando, durante el matrimonio, la propiedad privativa de uno de los cónyuges experimentaba un incremento en su valor debido a razones intrínsecas, tal incremento intrínseco no era compartido con el otro cónyuge. . . . Pero mejoras e incrementos en la propiedad de cualquiera de los cónyuges, si se originaban de la industria o el trabajo o si se debían al uso de propiedad de la comunidad, le correspondían a la comunidad. . . . El principio del Derecho español sobre comunidad ha sido generalmente seguido en este país con relación a incrementos en valor experimentados durante el matrimonio por propiedad privativa de uno de los cónyuges. Así el incremento resulta en el curso ordinario de las cosas, y no de alguna labor o industria, tales incrementos pertenecen por entero al dueño de la propiedad privativa. El resultado es el contrario, por supuesto, si el trabajo, industria o propiedad de los esposos han contribuído al incremento, porque entonces la comunidad debe compartir en el incremento en la proporción a la que la comunidad contribuyó al aumento." ([8])

---

([7]) Véase Nota sobre este caso en XV Tul. L. Rev. 308.

([8]) Esto no es del todo correcto, pues, como vimos anteriormente, el aumento de valor provocado por la inversión o expensa del caudal

Como vimos anteriormente, no hubo prueba de que la plusvalía se debió al esfuerzo de uno de los cónyuges o a costa del caudal común. Por lo tanto nada podemos acreditarle a la sociedad de gananciales.

■ Asumiendo, sin embargo, que la plusvalía fuera el resultado de las actividades de la corporación, no podemos imputar al causante esas actividades.

La corporación tiene su propia personalidad jurídica y su propio patrimonio, distinto al de sus accionistas. Ley General de Corporaciones, Sec. 106, 14 L.P.R.A. sec. 1106. Sus asuntos son dirigidos por la junta de directores, salvo cuando otra cosa se disponga por ley o por los artículos de incorporación. Ley General de Corporaciones, Sec. 401, 14 L.P.R.A. sec. 1401. Es a la junta como tal a la que se adscribe o imputa el éxito o fracaso, de la gestión corporativa, y no a sus directores en particular, no importa cuán útiles y eficaces sean los esfuerzos de sus directores o accionistas. Estos tienen derecho a lo sumo a una retribución por sus servicios, la cual se consideraría de carácter ganancial, como sueldo o remuneración obtenida por su esfuerzo o industria. Inciso 2, Art. 1301 Código Civil.(9) Pero el acrecimiento del patrimonio de la corporación pertenece a ésta hasta que se distribuya en forma de dividendos, con arreglo a lo que dispone la Ley General de Corporaciones, Sec. 517, o finalmente se disuelva.

El hecho de que la corporación como ente jurídico solo puede actuar a través de personas naturales, meramente explica una realidad. Lo que tiene importancia y consecuencia jurídica sin embargo, es que esa actuación de sus directores en beneficio del patrimonio corporativo es un esfuerzo corporativo y no uno personal. Pretender lo contrario equi-

---

común queda integrado con la cosa misma, reservándose a la sociedad de gananciales un crédito contra el cónyuge propietario. Puig Brutau, *op. cit.* pág. 664, Borrell y Soler, *op. cit.* pág. 430..

(9) Véase escolio (2).

valdría a descorrer el velo corporativo. Esto solamente se justifica cuando la personalidad corporativa se utilice para "derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen." *South P.R. Sugar Corp.* v. *Junta Azucarera*, 88 D.P.R. 43 (1963) y casos allí citados. Ninguna de estas circunstancias está presente en el caso de autos.

Por lo tanto, aún en el supuesto de que la plusvalía de las acciones se debiera al esfuerzo de la corporación, incurrió también en error el tribunal de instancia al imputarle dicho esfuerzo al causante.

■ El tribunal de instancia, y la Sucesión en su alegato, invocan en su apoyo la Sentencia de 8 de noviembre de 1893 del Tribunal Supremo de España que resolvió:

"Los sobreprecios o primas de acciones de bancos aportadas al matrimonio o los beneficios por ellas obtenidos, son productos y ganancias realizados por la sociedad conyugal que a la misma corresponden, no pudiendo ser considerado como incremento o accesión de las acciones antiguas, sino que pertenecen a la clase de gananciales, según terminantemente se halla declarado por el Tribunal Supremo." Jurisprudencia Civil, Tomo 74, pág. 302. [10]

Dicha sentencia no nos obliga ni sus razonamientos nos persuaden. *Vda. de Fornaris* v. *Amer. Surety Co. of N.Y.*, 93 D.P.R. 29, 47 (1966); *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207 (1965); *Banchs* v. *Colón*, 89 D.P.R. 481–492 (1961); *Reyes* v. *Tribl. Superior*, 84 D.P.R. 29, 31, 32; *Pueblo* v. *Matos*, 83 D.P.R. 335, 341 (1961).

Allí se trataba de la emisión de nuevas acciones por aumento del capital de la corporación. Se concedió a los antiguos tenedores de acciones la ventaja—prima o sobreprecio—de suscribir las nuevas acciones al 110 por 100 del valor nominal, cuando el valor en la Bolsa llegaba a 300. La mujer, dueña con carácter privativo de las antiguas acciones, ad-

---

[10] Este criterio fue ratificado en las sentencias de 14 de mayo de 1929, de 31 de mayo de 1930 y 18 de abril de 1934.

quirió varias de las nuevas acciones con dinero del caudal común.

Nos parece claro que la ventaja de adquirir al 110 por 100 lo que valía 300 constituía una verdadera accesión o incremento de las antiguas acciones. Era una consecuencia inherente al dominio de las acciones primitivas, sin que tuviera nada que ver con el incremento la industria o esfuerzo de los cónyuges. Por eso, no podía reputarse en otra forma que no fuera como bien privativo. Claro, el pago que se hizo al 110 por 100 para adquirir las nuevas acciones, siendo un gasto o expensas del caudal común, tenía que acreditársele a la sociedad de gananciales. Sin embargo, el Tribunal Supremo de España, no hizo distinción alguna y consideró ganancial tanto el incremento como el gasto. Por ello, ha sido duramente criticado por varios tratadistas.[11] Scaevola lo considera equivocado, siéndole inconcebible "la ofuscación que padeció el alto Tribunal." Analizándola expresa:

"¿por dónde supone el Tribunal, callando las razones de su afirmación, que no pueden considerarse como accesión o incremento los beneficios de que se trata? ¿Están comprendidos quizás en el número 1º del art. 1401 por haber sido onerosa y a costa del caudal común su adquisición durante el matrimonio? ¿Acaso hubo industria o trabajo de los cónyuges o de cualquiera de ellos como fundamento de la adquisición? ¿Es, por último, que el Tribunal admite que el mayor valor de la cosa convertida en otra cosa nueva es frutos, rentas o intereses de los que se comprenden en el número 3º del artículo 1401." *op. cit.* pág. 159.

---

[11] Scaevola *op. cit.* 157; Álvarez Álvarez, *El Aumento de Capital de las Sociedades Anónimas y la Sociedad Ganancial*—13 *Anales de la Academia Matritense* 229 (1959); Véase además la discusión del tema por Puig Brutau, *op. cit.* pág. 644. Véase además *el Dictamen Núm. 14* de Clemente de Diego en *Dictámenes Jurídicos*, Tomo I, pág. 167. Editorial Bosch, *Barcelona y el Dictamen Núm. 3* de A. Maura en *Dictámenes* Tomo VI, pág. 31, Editorial Saturnino Calleja, S. A. Madrid, en las cuales se concluyó, luego de considerarse extensamente el problema, que el sobreprecio o prima de las acciones aportados como bien privativo del cónyuge tiene esta propia calidad y no es ganancial.

Álvarez Álvarez lo considera una generalización excesiva que no constituye jurisprudencia:

"De esta jurisprudencia (¹²) se puede, aparentemente sacar una conclusión inmediata: las acciones nuevas adquiridas durante el matrimonio son gananciales. Tal afirmación es, ya veremos, excesiva. Mi opinión personal es que las acciones nuevas, por suscribirse durante el matrimonio, no han de ser gananciales, sino que depende no sólo que las aportaciones sean privativas o gananciales, sino también de la titularidad de las antiguas acciones y del derecho de suscripción.

Concretamente la conclusión que se ha extraído de la jurisprudencia del Tribunal Supremo, a veces por el propio Tribunal, es excesivamente simplista, porque aunque en algún caso los considerandos de las sentencias generalicen, eso no obliga ni constituye jurisprudencia que se forma con los fallos y no con el *obiter dictum.*" *op. cit.* pág. 230.

Refutando los fundamentos de la doctrina sentada por el Tribunal, Álvarez Álvarez expresa:

"Según esto, los beneficios obtenidos por la negociación o venta de un bien privativo son gananciales. Esto nadie ha osado nunca defenderlo. Si una casa que se aportó por 1000 y se vendió en 5000, esos 4000 son tan privativos como la casa misma; esto ha sido siempre así, pero si se admitiera la tesis del Tribunal Supremo en época de desvalorización monetaria, la injusticia no tendría límites, sería sencillamente convertir un régimen de comunidad de adquisiciones a título oneroso en otra de comunidad universal." *Id.* pág. 233.

Concluye a la pág. 234 que:

"El defecto está en que llevado de un insuficiente estudio del problema mercantil, de una absoluta falta de regulación de este derecho en las escasas normas sobre Sociedades Anónimas del Código de Comercio y de su concepto de frutos totalmente exagerado—entendiendo que fruto es todo beneficio de una cosa y confundiendo los derechos o facultades con los frutos—ha caminado por la fácil pendiente de las generalizaciones y ha creado

---

(¹²) Se refiere tanto a la Sentencia de 8 de noviembre de 1893 como a las mencionadas en el escolio (10).

una 'aparente doctrina legal' en frases de relleno en los considerandos que no tenían ni su consecuencia, ni su justificación en los fallos y que en realidad no eran necesarias en ninguno de los casos resueltos." *Id.* pág. 234.

Hasta aquí basta para rechazar las pretensiones del tribunal de instancia de incorporar a nuestro Derecho una doctrina tan deleznable. Pero si eso no fuera suficiente, es propio señalar que posteriormente, en su Sentencia de 23 de enero de 1947, el Tribunal Supremo de España recoge velas y descarta las generalizaciones de la Sentencia de 8 de noviembre de 1893 afirmando: ". . . el fruto es algo producido por la cosa que lo da y es evidente que las acciones nuevas no pueden estimarse generadas por las acciones antiguas, cuyo fruto o producto son los dividendos repartidos a los accionistas o prestaciones que tengan igual carácter . . ., . . . el derecho de suscripción de nuevas acciones no tiene el carácter de fruto . . . ." [13]

*Por los anteriores razonamientos resolvemos que la plusvalía del inmueble y de acciones pertenecientes a uno solo de los cónyuges es de carácter privativo.*

---

[13] Véase discusión de esta Sentencia de 23 de enero de 1947, en el precitado artículo de Álvarez Álvarez, pág. 235 y siguientes.