Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| MINERVA SÁNCHEZ PÉREZ<br><br>Parte Apelante<br><br>v.<br><br>B-CELLULAR CORP. REPRESENTADA POR SU AGENTE RESIDENTE BETZAIDA QUIÑONES SÁNCHEZ, BETZAIDA QUIÑONES SÁNCHEZ, ASEGURADORA A, B Y C.<br><br>Parte Apelada | TA2025AP00297 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2021CV00124<br><br>Sobre: Incumplimiento de Contrato, Cobro de Dinero, Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de enero de 2026.

Comparece ante *nos* Minerva Sánchez Pérez (Sánchez Pérez o apelante) y nos solicita que revisemos y revoquemos una *Sentencia* emitida el 18 de junio de 2025 y notificada el 23 de junio de 2025, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Humacao. Mediante dicho dictamen, el TPI declaró *No Ha Lugar* la *Demanda* incoada por la parte apelante. Además, condenó a Sánchez Pérez al pago de $5,000.00 por concepto de honorarios de abogado por temeridad.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I.**

El caso de autos tuvo su origen el 2 de agosto de 2021, con la presentación de una *Demanda* sobre incumplimiento de contratos, cobro de dinero y daños y perjuicios, en contra de B-Cellular Corp.

(B-Cellular) y Betzaida Quiñones Sánchez (Quiñones Sánchez) (en conjunto, los apelados). Mediante esta, alegó que le entregó a Quiñones Sánchez la suma de $17,000.000, para la compra de una tienda de celulares propiedad de B-Cellular. Expresó que, a pesar de múltiples requerimientos, Quiñones Sánchez nunca formalizó la compraventa, no devolvió el dinero e incumplió con conseguir un comprador en un periodo corto de tiempo.

Posteriormente, el 28 de abril de 2021, B-Cellular presentó una *Moción al Amparo de la Regla 10.4 de Procedimiento Civil – Sobre Exposición Mas Definida*. Ante ello, el 31 de agosto de 2021, la parte apelante presentó una *Demanda Enmendada*. Acaecidos varios trámites procesales, el 28 de septiembre de 2021, Quiñones Sánchez presentó una *Contestación a Demanda Enmendada*. A grandes rasgos, negó las alegaciones de la demanda. Sostuvo que recibió un cheque pagadero a la orden de B-Cellular y no en su carácter personal. Indicó, además, que la tienda B-Cellular no le pertenecía. El 30 de octubre de 2021, B-Cellular presentó una *Contestación a Demanda Enmendada*. En la misma, afirmó que el cheque recibido era para la compra de la llave para operar una tienda de venta de celulares que ubicaba en el municipio de Carolina. Asimismo, esgrimió que el incumplimiento con el pago del préstamo fue causado por la apelante.

Luego de varios trámites procesales, innecesarios pormenorizar, los días 14, 15 y 16 de enero de 2025, se llevó a cabo el Juicio en su Fondo. Subsiguientemente, el 18 de junio de 2025, notificada el 23 de junio de 2025, el foro primario emitió una *Sentencia* mediante la cual declaró *No Ha Lugar* la *Demanda* y condenó a Sánchez Pérez al pago de $5,000.00 por concepto de honorarios de abogado por temeridad. En su dictamen, el TPI determinó que la parte apelada probó que la deuda reclamada no es correcta. Además, sostuvo que, con relación a los daños solicitados,

hubo ausencia total de prueba. Añadió que, la parte apelante actuó temerariamente y que obligó a la parte apelada a incurrir en gastos legales que eran totalmente innecesarios.

Inconforme, el 8 de julio de 2025, la parte apelante presentó una *Reconsideración a Sentencia.* Entretanto, el 21 de julio de 2025, la parte apelada presentó una *Réplica en Oposición a Solicitud de Reconsideración.* El 22 de julio de 2025, notificada el 29 de julio de 2025, el TPI emitió una *Orden* mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración.

Inconforme aun, el 28 de agosto de 2025, Sánchez Pérez compareció ante *nos* mediante un recurso de *Revisión Judicial* y alegó la comisión de los siguientes errores:

A. ERRÓ EL TRIBUNAL DE INSTANCIA AL NO APLICAR CORRECTAMENTE LA DOCTRINA DE DESCORRER EL VELO CORPORATIVO, IGNORANDO LA AUSENCIA DE SEPARACIÓN ENTRE CORPORACIÓN Y ACCIONISTA.

B. ERRÓ EL TRIBUNAL DE INSTANCIA AL NO VALORAR ADECUADAMENTE LA PRUEBA DOCUMENTAL Y TESTIFICAL QUE EVIDENCIABA FRAUDE.

C. ERRÓ EL TRIBUNAL AL NO CONSIDERAR QUE HUBO ENGAÑO Y DOLO DESDE LA FASE PRECONTRACTUAL, VICIANDO EL CONSENTIMIENTO.

D. ERRÓ EL TRIBUNAL AL DESESTIMAR LA RECLAMACIÓN DE RESPONSABILIDAD PERSONAL, CUANDO LA JURISPRUDENCIA EXIGE DESCORRER EL VELO ANTE FRAUDE CORPORATIVO.

E. ERRÓ EL TRIBUNAL EN SU DETERMINACIÓN DE CREDIBILIDAD SELECTIVA, AL FAVORECER EL TESTIMONIO DE LA DEMANDADA SIN INTEGRAR LA EVIDENCIA OBJETIVA DE QUE BETZAIDA QUIÑONES ACTUÓ INDISTINTAMENTE COMO PERSONA NATURAL Y CORPORACIÓN.

F. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO ESTABLECER QUE EN EL PRESENTE CASO EXISTE UNA DEUDA CIERTA, LÍQUIDA Y EXIGIBLE, LA CUAL DEBE SER PAGADA, INDISTINTAMENTE DE QUE RESPONDA LA CORPORACIÓN O LA SRA. BETZAIDA QUIÑONES EN SU CARÁCTER PERSONAL.

G. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN IMPONER HONORARIOS DE $5,000.00 A LA SEÑORA SÁNCHEZ PÉREZ POR INSISTIR EN SU RECLAMO EN CONTRA DE LA SRA. BETZAIDA QUIÑONES.

Examinado el recurso ante nuestra consideración, el 3 de septiembre de 2025, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte apelada para presentar su posición al recurso de apelación. El 14 de octubre de 2025, la parte apelada presentó una *Oposición a Revisión Judicial*. Contando con la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Derecho de contratos**

Nuestro ordenamiento jurídico permite la libertad de contratación; siempre y cuando, los pactos, cláusulas y condiciones no sean contrarios a la ley, la moral o al orden público. Artículo 1207 del Código Civil de Puerto Rico (31 LPRA ant. sec. 3556).[1] Si se cumple con lo dispuesto, el contrato tendrá fuerza de ley entre las partes, por lo que ambas se obligan al cumplimiento de lo allí pactado y de sus consecuencias. Artículos 1044 y 1210 del Código Civil de Puerto Rico (31 LPRA ant. sec. 2995 y 3375). En adición, "cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan". *Corporación del Fondo del Seguro del Estado v. Unión de Médicos de la CFSE*, 170 DPR 443 (2007).

A su vez, los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o a prestar algún servicio. Artículo 1206 del Código Civil de Puerto Rico (31 LPRA ant. sec. 3371)*; García Reyes v. Cruz Auto Corp.*, 173 DPR 870 (2008); *Collazo Vázquez v. Huertas Infante*, 171

---

[1] Aunque el Código Civil citado, Código Civil de Puerto Rico de 1930, fue derogado por la Ley Núm. 55-2020, conocido como Código Civil de Puerto Rico, hacemos referencia al primero por ser el que estaba vigente a la fecha de la controversia de autos.

DPR 84 (2007). Así pues, la existencia de un contrato se constata cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación que se establezca. Artículo 1213 del Código Civil de Puerto Rico (31 LPRA ant. sec. 3391); *García Reyes v. Cruz Auto Corp., supra,* a la pág. 885; *Rivera v. PRAICO,* 167 DPR 227 (2006). Una vez concurren las condiciones esenciales para su validez, un contrato es obligatorio "cualquiera que sea la forma en que se haya celebrado". Artículo 1230 del Código Civil de Puerto Rico (31 LPRA ant. sec. 3451).

Según establece el Artículo 1252 del Código Civil (31 LPRA ant. sec. 3511), "los contratos pueden ser anulados aunque no haya lesión para los contratantes, siempre que adolezcan de alguno de los vicios que los invalidan con arreglo a la ley". Por lo tanto, si el consentimiento se presta por error, violencia, intimidación o dolo, será nulo. Artículo 1217 del Código Civil (31 LPRA ant. sec. 3404). Existe el dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho. Artículo 1221 del Código Civil (31 ant. LPRA sec. 3408).

Así, el dolo se entiende como todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquel que no solo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él. *Colón v. Promo Motor Imports, Inc.,* 144 DPR 659 (1997). Véase, además, *Sánchez Rodríguez v. López Jiménez,* 118 DPR 701 (1987); *Rivera Vda. de Hernández v. Hernández,* 44 DPR 356 (1933). No todo tipo de dolo produce la nulidad del contrato. A tales efectos, el Artículo 1222 del Código Civil establece que, "[p]ara que el dolo produzca la nulidad de los contratos, deberá ser grave y

no haber sido empleado por las dos partes contratantes". (31 LPRA ant. sec. 3409). Este tipo de dolo con características de gravedad ha sido denominado el dolo causante. *Colón v. Promo Motor Imports, Inc., supra; Rivera v. Sucn. Díaz Luzunaris*, 70 DPR 181 (1949). El dolo grave es el que causa, motiva, sirve de ocasión y lleva a celebrar el contrato, de modo tal que, sin él, este no se hubiera otorgado. *Colón v. Promo Motor Imports, Inc., supra.*

De otro lado, existe otra especie de dolo, denominado por el Artículo 1222 del Código Civil, *supra*, como dolo incidental, cuya existencia no produce la nulidad del contrato, sino que solo obliga al que lo empleó, a indemnizar daños y perjuicios. *Colón v. Promo Motor Imports, Inc., supra.* Ello es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación. *Íd.* En el dolo incidental, contrario al dolo causante, existe la voluntad de contratar del perjudicado, pero hay engaño en el modo en que se celebra el contrato. *Íd.*

Los efectos contrapuestos de cada tipo de dolo son notables. Es decir, mientras que el dolo causante produce la nulidad del contrato, el incidental permite únicamente la indemnización por daños y perjuicios. *Colón v. Promo Motor Imports, Inc., supra.* Así pues, resulta menester señalar que los dos tipos de dolo vician el consentimiento en el origen o en la formación del contrato, esto es, en la etapa de la contratación. *Íd.*

## B. Cobro de dinero

En un caso de cobro de dinero el demandante sólo tiene que probar: (1) que existe una deuda válida; (2) que la misma no se ha pagado; y (3) que es el acreedor y los demandados sus deudores. *General Electric v. Concessionaraires, Inc.*, 118 DPR 32 (1986). En el caso *Ramos de Szendrey v. Colón Figueroa*, 153 DPR 534 (2001), el Tribunal Supremo de Puerto Rico se expresó sobre el requisito de que una deuda sea líquida y exigible. A esos efectos, expuso:

> Cuando se presenta una demanda en cobro de dinero se debe alegar que la deuda reclamada es una "líquida, vencida y exigible". Ello se debe, a que únicamente pueden reclamarse por la vía judicial, aquellas deudas que hayan advenido líquidas, vencidas y exigibles. Una deuda es líquida, vencida y, por tanto, exigible cuando por la naturaleza de la obligación o por haberlo requerido el acreedor, la deuda debe ser satisfecha. Asimismo, si la cuantía debida es cierta y determinada, se considera que la deuda es líquida y, por consiguiente, puede ser exigible en derecho antes su vencimiento. Es decir, la deuda es líquida cuando se sabe cuánto es lo que se debe. Igualmente se considera que la deuda es "exigible" cuando la obligación no está sujeta a ninguna causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958 (1950). Por ello, al alegarse que la deuda es líquida y exigible se están exponiendo hechos, a saber: que la cantidad adeudada ha sido aceptada como correcta por el deudor y que está vencida. En resumen, la deuda es líquida cuando se sabe cuánto es lo que se debe y se considera exigible cuando la obligación no está sujeta a ninguna causa de nulidad.

## C. Corporaciones

Las leyes corporativas son instrumentos utilizados por los gobiernos para estimular el desarrollo económico. *Santiago et al. v. Rodríguez et al.,* 181 DPR 204 (2011). Es por esto que las corporaciones son entidades con personalidad jurídica propia y separada de sus miembros o titulares, por la que estos responderán hasta el monto de su inversión en la misma, pero no con sus bienes personales. *Miramar Marine et al. v. Citi Walk et al.*, 198 DPR 684 (2018); C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo,* ed. 2016, pág. 15. Una corporación es, pues, una persona jurídica por virtud del reconocimiento que el Estado hace de dicha condición. *Rivera Maldonado v. E.L.A.*, 119 DPR 74 (1987). Una vez una corporación queda constituida, esta podrá adquirir y poseer bienes de todas clases, como contraer obligaciones, conforme a las leyes, reglas de su constitución y sus estatutos corporativos. A tono con esto, la Ley General de Corporaciones, Ley Núm. 164-2009 (14 LPRA sec. 3501, *et seq.*) se creó a los fines de proveer para los asuntos relativos a la existencia y vida de las corporaciones en Puerto Rico. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70 (2021).

De otro lado, dado que la corporación tiene una personalidad jurídica separada y un patrimonio distinto al de sus directores y oficiales, las actuaciones corporativas, a través de sus agentes, solamente obligan a la corporación. *Sucn. Santaella v. Srio. de Hacienda*, 96 DPR 442 (1968). Es decir, como norma general, las actuaciones de los oficinales y directores de la corporación no los obligan personalmente, sino que obligan a la entidad que representan. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38 (2015). Así, este axioma, conocido como el principio de responsabilidad limitada, constituye un principio básico de derecho corporativo. *In re Amundaray Rodríguez I*, 172 DPR 60 (2007).

### D. Doctrina de descorrer el velo corporativo

El principio de responsabilidad limitada es la norma general a observar en todo procedimiento civil instado por un acreedor corporativo contra la persona de los accionistas de la entidad. Ahora bien, existe la posibilidad de que los accionistas no hagan un uso apropiado de la figura de la corporación e incurran en actos fraudulentos e ilegales. Al así obrar, los accionistas derrotan los fundamentos de política pública sobre los que esta cimentada la figura de la corporación y el principio de la responsabilidad limitada. A dichos efectos, se justifica, por excepción, excluir a los accionistas del manto protector de la persona jurídica para hacerlos responsables personalmente de las obligaciones de la corporación. *Sucn. Santaella v. Srio. de Hacienda*, 96 DPR 442 (1968).

Por ser la excepción al principio fundamental de responsabilidad limitada, aquél litigante que pretenda desconocer a una corporación, para hacer responsable personalmente a los accionistas de ésta, tendrá que hacerlo con prueba fuerte y robusta. Esto significa que el litigante que busca descorrer el velo no sólo tiene sobre sí el peso de todo demandante en un pleito civil, sino que además le corresponde rebatir con prueba contundente la

presunción de responsabilidad limitada que cobija a los accionistas de una corporación. Para rebatir esta presunción no es suficiente que el demandante presente alegaciones generales y estereotipadas de que la corporación es un alter ego de los accionistas o que los accionistas utilizaron la corporación para efectuar una acción fraudulenta. Se considera que "una corporación es el alter ego o conducto económico pasivo de sus accionistas cuando entre éstos y la corporación existe tal identidad de interés y propiedad que las personalidades de la corporación y de los accionistas, sean éstos personas naturales o jurídicas, se hallan confundidas, de manera que la corporación no es, en realidad, una persona jurídica independiente y separada". *DACO v. Alturas de Fl. Dev. Corp.*, 132 DPR 905 (1993).

En relación con la doctrina de descorrer el velo corporativo, nuestro Tribunal Supremo ha establecido que:

> [L]a parte que propone el levantamiento del velo [presenta] prueba que demuestre que no existe una separación adecuada entre la corporación y el accionista, y que los hechos son tales que reconocer dicha persona jurídica equivaldría a "sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen" [...]. El peso de la prueba no se descarga con la mera alegación de que la empresa es un alter ego de una persona, sino con prueba concreta que demuestre que la personalidad de la corporación y de la del accionista no se mantuvieron adecuadamente separadas. *DACO v. Alturas Fl. Dev. Corp.*, *supra*, pág. 927.

Así pues, para proceder a descorrer el velo de la corporación, deben concurrir los siguientes elementos:

1. La corporación se utiliza como un instrumento o alter ego de los accionistas;

2. Los accionistas cometen ciertos actos concretos de naturaleza fraudulenta o ilegal; y que

3. Existe una relación causal entre la utilización de la corporación como un instrumento o alter ego y el fraude o acto ilegal perpetuado. Díaz Olivo, *Corporaciones: Tratado Sobre Derecho Corporativo*, 2ª ed. del autor 2016, pág. 140-141.

En vista de los elementos que la jurisprudencia y la doctrina requieren para que pueda invocarse la doctrina de descorrer el velo

corporativo, es imprescindible que el demandante identifique en sus alegaciones aquellos actos y conductas específicas de naturaleza ilegal o fraudulenta por parte de los accionistas que establecen que la corporación es un mero artificio suyo para la comisión de actos fraudulentos que justifica, por excepción, imponerles responsabilidad personal. *Íd.*, pág. 141.

## D. Evaluación y suficiencia de la prueba

La Regla 110 de las Reglas de Evidencia de Puerto Rico (32 LPRA Ap. VI) establece que,

> La Juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes:
>
> (A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.
> (B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.
> (C) Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza.
> (D) La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley.
> (E) La juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente.
> (F) En los casos civiles, la decisión de la juzgadora o el juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición, al contrario. En los casos criminales, la culpabilidad de la persona acusada debe ser establecida más allá de duda razonable.
> (G) Cuando pareciere que una parte, teniendo disponible una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá considerarse con sospecha.
> (H) Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Evidencia directa es aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual por si o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia.

La Regla 110 de las Reglas de Evidencia, *supra*, además de establecer guías para la evaluación de la prueba y advertir sobre las consecuencias de no cumplir con las cargas probatorias requeridas, establece el orden en que debe ofrecerse la evidencia. De ella se desprende, primero, que el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes. Así, el peso de la prueba es la obligación que tiene la parte que afirma la cuestión en controversia, de convencer al juzgador sobre la forma particular en que ocurrieron los hechos que alega. Segundo, nuestro sistema evidenciario impone la obligación inicial o primaria de presentar evidencia a la parte que sostiene la afirmativa en la cuestión en controversia. Así que, como regla general, tanto la carga de producir como la obligación de persuadir al juzgador sobre la existencia de los elementos esenciales de una reclamación, acusación o causa de acción, la tiene el demandante en un caso civil y el ministerio público en un caso criminal. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, Segunda Edición, Ediciones Situm, 2005, pág. 148-149.

Así pues, del citado inciso (b) surge la obligación que tiene un litigante, que asevera un hecho como parte de la teoría de su caso, de probarlo cumplidamente. Por lo tanto, no le corresponde a la parte demandada traer prueba para desmentir la alegación formulada por la demandante. *Asoc. Autentica Empl. v. Municipio de Bayamón*, 111 DPR 527 (1981). La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa. Además, es norma trillada que meras alegaciones o teorías no constituyen prueba. *Íd.*

### E. Apreciación de prueba

En materia de apreciación de prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos

formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959).

Por ello, este Foro apelativo intermedio evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de Procedimiento Civil (32 LPRA Ap. V). Véase, además, *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín, supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645 (1986). Por tanto, como foro apelativo, no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad que hace un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio, por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345 (2009). Así

pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que, el foro de instancia es el único que observa a las personas que declaran y aprecia su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR, supra*. Véase, además, *Trinidad v. Chade*, 153 DPR 280 (2001); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Regla 42.2 de Procedimiento Civil, *supra*. Véase, además, *Rivera Menéndez v. Action Services*, *supra*, págs. 448-449; *Monllor Arzola v. Soc. de Gananciales*, 138 DPR 600 (1995). No obstante, si de un examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer PR, Inc. v. Rodríguez*, 100 DPR 826, 830 (1972). Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172, 181 (1985).

### F. Los honorarios de abogado por temeridad

La Regla 44.1(d) de Procedimiento Civil (32 LPRA Ap. V), le concede al TPI la facultad de imponer honorarios de abogado, en aquellos casos en los que intervenga temeridad o frivolidad. En lo pertinente, la *temeridad* se define como una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. *Fernández v. San Juan Cement Co. Inc.*, 118 DPR 713, 718 (1987).

Es conocido que la temeridad también sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos

innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio. *Fernández v. San Juan Cement Co. Inc.*, *supra*, citando a H. Sánchez, *Rebelde sin Costas*, 4(2) Boletín Judicial 14 (1982). Es decir, se entiende que un litigante actúa con *temeridad o frivolidad* cuando "por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Andamios de PR v. JPH Contractors*, 179 DPR 503, 520 (2010). En fin, la *temeridad* es aquella conducta que "haga necesario un pleito que se pudo evitar; que lo prolongue innecesariamente; o que requiera a la otra parte efectuar gestiones innecesarias". *Torres Ortiz v. ELA*, 136 DPR 556, 565 (1994).

Puede haber temeridad cuando en la Contestación a la Demanda se niegue responsabilidad, pero esta se acepte posteriormente; cuando la parte demandada se defienda injustificadamente de la acción en su contra; cuando la parte demandada crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante; cuando el demandado se arriesgue a litigar un caso del que surja claramente su responsabilidad; y cuando una parte niegue la certeza de un hecho, a pesar de constarle su veracidad. *OEG v. Román González,* 159 DPR 401, 418 (2003).

Ahora bien, la evaluación de si ha mediado o no temeridad recae sobre la discreción sana del tribunal sentenciador y sólo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad. *SLG Flores Jiménez v. Colberg*, 173 DPR 843, 866 (2008). Es por ello, que este Tribunal no debe intervenir con el ejercicio de tal discreción; a menos que se demuestre que: (a) hubo un craso abuso de discreción; (b) el foro inferior actuó con prejuicio o parcialidad; (c) el foro inferior se equivocó en la interpretación o

aplicación de cualquier norma procesal o de derecho sustantivo; o (d) cuando la cuantía impuesta sea excesiva. *PR Oil v. Dayco*, 164 DPR 486, 511 (2005). Sin embargo, una vez se fija la existencia de *temeridad*, la imposición del pago de honorarios de abogado es obligatoria. *Íd.*

**III.**

En el caso que nos ocupa, la parte apelante asevera que el foro de instancia incidió al no aplicar correctamente la doctrina de descorrer el velo corporativo, al pasar por alto la ausencia de separación real entre la corporación y su accionista. También, alega que erró el foro apelado al desestimar la reclamación de responsabilidad personal, aun cuando la jurisprudencia exige descorrer el velo en casos de fraude corporativo. Indicó, además, que erró el foro recurrido al no valorar adecuadamente la prueba documental y testifical presentada, la cual, según afirma, evidenciaba la existencia de fraude, y al conferir mayor credibilidad al testimonio de la parte demandada sin integrar la evidencia objetiva que demostraba que esta actuó indistintamente como persona natural y corporación. Por estar intrínsicamente relacionados entre sí, procederemos a discutirlos de manera conjunta.

Según surge del expediente, el foro apelado determinó, tras aquilatar la prueba desfilada, que la parte apelante no logró demostrar la existencia de fraude corporativo ni el uso indebido de la personalidad jurídica de la corporación para evadir responsabilidad personal. De la prueba surge que la corporación mantenía una existencia jurídica independiente y que no se acreditó que la parte demandada actuara de manera tal que justificara ignorar la separación entre su carácter personal y el corporativo. Contrario a lo alegado por la apelante, el mero hecho de que Quiñones Sánchez fuera la única accionista de la corporación no

equivale, por sí solo, a actuar indistintamente como persona natural y como corporación, ni demuestra la intención de defraudar. Las determinaciones del tribunal de instancia sobre este particular están debidamente sustentadas en la evidencia presentada y no reflejan error manifiesto alguno. Así las cosas, concluimos que no se presentó prueba robusta y convincente de los elementos requeridos para descorrer el velo corporativo, por lo que no procedía aplicar esta doctrina.

Ahora bien, en cuanto al señalamiento de error relacionado con la apreciación de la prueba vertida en el juicio, reiteramos que corresponde exclusivamente al tribunal de instancia evaluar la credibilidad de los testigos y el peso que ha de concederse a la prueba presentada. El foro apelativo no debe intervenir con dichas determinaciones salvo en circunstancias extraordinarias que no están presentes en este caso. El hecho de que la apelante discrepe de la valoración realizada por el TPI no constituye, por sí solo, un fundamento válido para la intervención apelativa. Del expediente no surge que el tribunal haya actuado movido por pasión, prejuicio o parcialidad, ni que haya incurrido en error manifiesto al aquilatar la prueba. Asimismo, el tribunal no estaba obligado a discutir de forma individual cada pieza de evidencia presentada, siempre que de la sentencia se desprenda que este consideró la prueba en su totalidad, como ocurrió en este caso. Por lo que, colegimos que no se cometieron los errores señalados.

De otra parte, la apelante sostiene que erró el tribunal de instancia al no considerar que existió engaño y dolo desde la fase precontractual, lo cual viciaba su consentimiento. Sobre este particular, el foro primario determinó que la apelante ingresó al negocio de forma voluntaria, sin coacción alguna, y que no realizó diligencias para informarse adecuadamente sobre la naturaleza y los riesgos del negocio antes de obligarse, por lo que el riesgo asumido

fue un acto propio. Asimismo, es nuestra contención que la prueba desfilada ante el foro primario demuestra que Quiñones Sánchez actuó de buena fe pues brindó el entrenamiento y la orientación acordada con Sánchez Pérez, lo cual es incompatible con una alegada intención de engañar. Así, fue la propia demandante quien reconoció que tuvo inhabilidad para aprender del negocio, por lo que acordó que este quedara bajo la administración de la corporación. Dichas determinaciones fácticas están sostenidas por la evidencia presentada y no ameritan la intervención de este foro apelativo. No se cometió el error señalado.

La apelante arguye también que incidió el TPI al no establecer que en el presente caso existe una deuda cierta, líquida y exigible, la cual debe ser satisfecha independientemente de que responda la corporación o la señora Quiñones en su carácter personal. Sin embargo, la prueba desfilada en el juicio reveló que B-Celullar Corp. realizó pagos al préstamo realizado por Sánchez Pérez para la compra del negocio por la cantidad de $4,007.75 y que la corporación asumió la responsabilidad de los costos operacionales de la tienda, aun cuando esta había sido adquirida mediante compraventa por Sánchez Pérez.

Finalmente, la parte apelante aduce que el tribunal incurrió en un craso abuso de discreción al imponerle temeridad y, en consecuencia, el pago de honorarios de abogado por la suma de $5,000.00. Como hemos expuesto anteriormente, las determinaciones del foro primario en cuanto a si una parte se condujo o no de forma temeraria son de naturaleza discrecional, por lo que nuestra intervención se circunscribe únicamente a las instancias en las que se demuestre un claro abuso de discreción. En el presente caso, un análisis del expediente ante nuestra consideración refleja que las actuaciones de la parte apelante ocasionaron gastos y molestias irrazonables a Quiñones Sánchez, al

obligarla a continuar litigando una reclamación que recaía sobre la corporación y no sobre su persona en carácter personal. Ante tales circunstancias, no se desprende que el TPI haya incurrido en abuso de discreción alguno al imponer la sanción apelada.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones